**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Dracy Lamont McKNEELY, Andrew Ellis, and Alandis Bennett, also known as Torjano Akines, Defendants–Appellees.**

No. 93–4019.

United States Court of Appeals, Tenth Circuit.

Oct. 8, 1993.

---

Bruce C. Lubeck, Asst. U.S. Atty. (David J. Jordan, U.S. Atty., with him on the briefs), Salt Lake City, UT, for plaintiff-appellant.

Ronald J. Yengich of Yengich, Rich & Xaiz, Salt Lake City, UT, for defendants-appellees Dracy Lamont McKneely and Andrew Ellis.

Deirdre A. Gorman, Ogden, UT, for defendant-appellee Alandis Bennett, aka Torjano Akines.

MOORE, ANDERSON, and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The government appeals a district court order granting defendants' motions to suppress evidence seized following a traffic stop, challenging the district court's findings that: (a) defendant Bennett, the back seat passenger in defendant McKneely's rented station wagon, had standing to contest the seizure of the evidence; (b) defendants' detention was unlawful; (c) defendants did not consent to the search of their vehicle; and (d) the "good faith exception" to the warrant requirement did not apply to the facts of this case. *United States v. McKneely*, 810 F.Supp. 1537 (D.Utah 1993). We hold the district court's conclusions were erroneous and reverse its judgment.

On the morning of June 15, 1992, Sevier County Sheriff's Deputy Phil Barney, a veteran officer with 26 years' experience patrolling Utah highways and extensive experience apprehending suspected drug traffickers, was heading westbound on Interstate 70. Shortly after 9:00 a.m., he clocked an eastbound vehicle going 71 miles per hour in a 65 mile zone. He changed direction, followed the vehicle for a short distance, and turned on his emergency equipment, thereby automatically activating a video camera which videotaped the entire stop from that point onward. Deputy Barney also activated a body microphone which recorded all conversations within a certain distance.

As he approached the vehicle, Deputy Barney observed defendant Ellis in the driver's seat, defendant McKneely in the front passenger's seat, and defendant Bennett in the back seat. At first, Deputy Barney did not

inform defendants why he had stopped them but instead asked to see Mr. Ellis' driver's license. Although Mr. Ellis had no driver's license, Deputy Barney discovered the vehicle was rented in Mr. McKneely's name and that Mr. McKneely, a licensed driver, had given Mr. Ellis permission to drive.

At that time, Deputy Barney smelled a "chemical" odor which he could not identify emanating from defendants' vehicle. There was nothing suspicious, however, about either Mr. McKneely's driver's license or the rental agreement.

Deputy Barney returned to his car and attempted to run a computer check on the vehicle and its occupants but was unable to do so because the computer system was "down." He gave Mr. Ellis a citation for driving without a license and a verbal warning for speeding. He also returned Mr. McKneely's driver's license and rental contract. He then asked if there were any drugs or guns in the vehicle. After receiving a negative response, he asked if he could search the vehicle.

The parties dispute whether consent was given. Though no understandable response to Deputy Barney's request was captured on tape,[1] at the suppression hearing he testified that defendant McKneely replied "yes" in a low or quiet voice. However, his contemporaneous police report indicated that Mr. Ellis, not Mr. McKneely, consented to the search.

Defendants exited and stepped to the rear of the vehicle. Defendant Ellis raised his hands to approximately chest level while exiting but immediately lowered them. Deputy Barney then proceeded to search the vehicle. When he discovered the glove compartment was locked and could not open it with the ignition key, he asked defendants if they had the key. Defendants replied they did not.

Deputy Barney informed defendants that he would obtain a search warrant to search the locked glove compartment. Because he could not reach the Sevier County Attorney on his mobile phone, Deputy Barney radioed the county dispatcher, who relayed the deputy's information to the county attorney. As support for the issuance of the warrant, Barney gave two facts: (a) the strong, unidentifiable chemical smell coming from the vehicle; and (b) the missing key to the glove compartment. The actual warrant affidavit, however, included three additional grounds: (a) defendants' vehicle had been stopped for a traffic violation; (b) one of the defendants had a criminal record relating to controlled substance offenses; and (c) Barney's belief, based on his extensive drug investigation experience, that defendants were transporting drugs.[2]

After calling in the search warrant, Deputy Barney began searching defendants' luggage, which he had taken from the rear of the station wagon. When one of the defendants objected and told the officer to stop, he returned to his car and amended the warrant application to include defendants' luggage.

The county attorney arrived with a search warrant about an hour and a half later. In the meantime, defendants sat on the tailgate of the rented station wagon. After the warrant had been delivered, Deputy Barney and other officers, who had joined him after the stop, opened the glove compartment and found approximately one pound of crack cocaine and a loaded pistol. Defendants were handcuffed, read their *Miranda* rights, and booked at the county jail.

The next day, defendants were transported to Salt Lake City and charged with possession with intent to distribute a mixture or substance containing crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. Defendants McKneely and Ellis also were charged with carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c) and 18 U.S.C.

---

1. The videotape of the entire transaction has been made a part of the record on appeal. There is a definite oral response to Deputy Barney's request; however, the response is neither loud nor clear enough to understand what was said.

2. A deputy at the sheriff's office signed the affidavit supporting the warrant. Though Barney did not authorize the deputy to sign for him, he testified this was usual county procedure. There is no dispute over the accuracy of the added facts.

§ 2. Defendants filed motions to suppress the evidence seized.

After holding evidentiary hearings and considering the parties' memoranda, the district court ultimately granted defendants' motions to suppress because of its findings that:

First, the stop of Defendants' car was not pretextual. Nonetheless, Barney did not have a reasonable suspicion to detain Defendants after the initial stop, nor did Defendants consent to the initial search. When Defendants objected to the search, Barney did not have probable cause to obtain a warrant. Consequently, the warrant was improper. Further, the illegally seized evidence may not be introduced because the magistrate abandoned his judicial function by issuing a warrant that did not have a substantial basis for a finding of probable cause.

*McKneely,* 810 F.Supp. at 1547–48. The government filed a timely notice of appeal, and the defendants were released from custody.

## I.

■ In its written suppression order, the district court first considered whether defendant Bennett had standing, as the vehicle's back seat passenger, to challenge the search. Citing Supreme Court precedent, the court determined because Mr. Bennett had neither a reasonable expectation of privacy in the contents of the glove compartment as a passenger, nor "automatic standing" merely because he had been charged with a possessory offense, he lacked standing to challenge the search. However, relying on *United States v. Arango,* 912 F.2d 441 (10th Cir.1990), *cert. denied,* 111 S.Ct. 1318 (1991), the court nonetheless concluded Mr. Bennett could challenge his own seizure, and if that seizure was unlawful, the seized evidence "must be excluded as fruit of the poisonous tree." *McKneely,* 810 F.Supp. at 1544 (quoting *Arango,* 912 F.2d at 446 (citation omitted)). Finding defendants had been illegally detained by Deputy Barney, the court granted Mr. Bennett's motion to suppress.

It is undisputed that Mr. Bennett does not have standing to challenge the search of the vehicle merely as a passenger or because he was charged with a possessory crime. *See United States v. Erwin,* 875 F.2d 268, 270–71 (10th Cir.1989) (back seat passenger did not have standing to challenge anything but the traffic stop because he did not claim any possessory interest in the contraband seized and did not show legitimate ownership or possession of the vehicle); *United States v. Salvucci,* 448 U.S. 83, 91, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980) ("[L]egal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest, for it does not invariably represent the protected Fourth Amendment interest.").

However, "standing to challenge a stop presents issues separate and distinct from standing to challenge a search." *Erwin,* 875 F.2d at 269. Therefore, "[e]ven if [a] defendant lacks standing to challenge the search of the car, if the initial stop was illegal, the seized contraband is subject to exclusion under the 'fruit of the poison tree' doctrine." *Id.* at 269 n. 2 (citations omitted); *see also Arango,* 912 F.2d at 446. Here, because defendants have not challenged the district court's finding that the speeding stop was not pretextual, Mr. Bennett's standing is linked to whether defendants' pre-arrest detention was unlawful.

## II.

■ In addressing defendants' contention that they were illegally detained, the district court first resolved "[t]he initial traffic stop was an investigatory detention that was supported by articulable facts that gave rise to a reasonable suspicion, namely that the vehicle was speeding." *McKneely,* 810 F.Supp. at 1543 (citation omitted). Thus, "[t]here was no impropriety up to the point when Barney issued the citation." *Id.* However, because the initial detention "ceased" after Deputy Barney cited Mr. Ellis and returned Mr. McKneely's driver's license and car rental agreement, any further detention would be "improper unless based on a reasonable suspicion or on consent." *Id.*

The court concluded Deputy Barney did not have reasonable suspicion to detain defendants beyond the initial traffic stop because he "was not aware of any inconsistency" in McKneely's documents, "was not apprised that any of the Defendants had a criminal record," and could not identify the chemical odor emanating from defendants' vehicle. *Id.* The court found the deputy's inability to identify the chemical odor particularly troubling given his involvement in over 200 drug stops.

Curiously, the court also determined that defendants were "free to leave" after Deputy Barney returned Mr. McKneely's papers and cited Mr. Ellis. *Id.* at 1544 (citation omitted). The court reasoned, "Barney's request to search the vehicle was not made in a threatening or overbearing manner, he did not touch Defendants or display a weapon, and other officers were not present." *Id.* (citation omitted). Our review of this matter, therefore, is somewhat complicated by the district court's apparently inconsistent legal conclusions.

"[T]he unlawful detention inquiry is fact-intensive, and we review the district court's fact findings for clear error." *United States v. Dewitt,* 946 F.2d 1497, 1502 (10th Cir.1991) (citation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992). However, "the ultimate issue of whether a seizure occurred is a question of law" which we review *de novo. United States v. Bloom,* 975 F.2d 1447, 1450 (10th Cir.1992) (quoting *United States v. Ward,* 961 F.2d 1526, 1534 (10th Cir.1992) (citations omitted)).

We conclude the district court misapplied the law of this Circuit, thereby overlooking the clear line historically drawn between police-citizen encounters which occur before and after an officer returns a person's driver's license, car registration, or other docu-

mentation. We have consistently held an officer who retains a driver's paperwork while asking the person questions unrelated to the initial purpose of a traffic stop must have reasonable suspicion to do so because such a detention constitutes a seizure within the meaning of the Fourth Amendment.[3] Yet, it is equally true that "the Fourth Amendment's ban on unreasonable seizures does not prohibit a police officer from asking a motorist questions if the encounter is a consensual one." *United States v. Walker,* 933 F.2d 812, 817 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Thus, "once the officer has returned the driver's license and registration in a routine traffic stop, questioning about drugs and weapons or a request for voluntary consent to search may be 'an ordinary consensual encounter between a private citizen and a law enforcement official'" so long as a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information. *United States v. Turner,* 928 F.2d 956, 958 (10th Cir.) (quoting *United States v. Werking,* 915 F.2d 1404, 1408 (10th Cir.1990)), *cert. denied,* —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *see also United States v. Deases,* 918 F.2d 118, 122 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991).

As in *Turner,* 928 F.2d at 959, here the district court found "none of the indicia that might give rise to a reasonable belief that Defendants were not free to leave." *McKneely,* 810 F.Supp. at 1544. Moreover, defendants concede Deputy Barney returned their documentation before asking further questions. It follows, then, defendants were free to leave; therefore, we conclude defendants were not illegally detained, and defen-

---

3. *See, e.g., United States v. Gonzalez,* 763 F.2d 1127, 1133 (10th Cir.1985) (consent to search not sufficiently attenuated from illegal detention where officer asked defendant to accompany him to police station and neither informed defendant he was free to leave nor returned his documentation); *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988) (absent reasonable suspicion, officer may not conduct "intrusive questioning" while retaining defendant's driver's license); *United States v. Walker,* 933 F.2d 812,

816 (10th Cir.1991) (defendant's continued detention for further questioning unrelated to scope of traffic stop while officer retained his driver's license "was an unreasonable seizure under the Fourth Amendment"), *cert. denied,* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); *United States v. Recalde,* 761 F.2d 1448, 1453–54 (10th Cir.1985) (defendant, whose driver's license had not been returned, did not consent to be taken to police station).

dant Bennett does not have standing to seek suppression of the seized contraband.

## III.

■ The district court concluded defendants did not consent to the search of their vehicle. Citing this Circuit's test for assessing whether consent is voluntary, the court first determined defendants' "consent was neither specific nor unequivocal" because "the videotape and tape recording recorded no audible consent from Defendants" when Deputy Barney asked to search their vehicle. *Id.* The court further found because Barney was uncertain which defendant affirmatively answered his request, the government failed to carry its burden of proof.[4] Thus, the court resolved "[w]hether Defendants responded or not, . . . their showing of consent [did] not meet the level necessary to establish voluntary and intelligent consent." *Id.*

Additionally, the court found defendants' consent had been coerced or made under duress. Although Deputy Barney's actions were not threatening, the court nonetheless determined defendants "apparently felt threatened," as "evidenced by Ellis's response as he exited the vehicle: he raised his hands as if he thought he was under arrest." *Id.*[5] According to the court, "[t]his action bespeaks a feeling of duress, not a voluntary consent." *Id.*[6]

Accordingly, because "the initial search of the vehicle and detention of Defendants [were] constitutionally flawed inasmuch as [they were] not based on reasonable suspicion or on consent," the district court granted the motions to suppress of defendants Ellis and McKneely. *Id.* As we have noted already, the court also suppressed the evidence with respect to defendant Bennett un-

der the "poisonous tree" doctrine, finding he too had been illegally detained. *Id.*

On appeal, the government contends consent was "valid, freely and voluntarily given" because none of the standard indicia of coercion accompanied Barney's polite request to search defendants' vehicle; that is, no weapons were drawn, no commands were issued, and no other officers were present. The government further asserts the confusion about whether Mr. Ellis or Mr. McKneely consented to the search is insignificant because "[a]n authorization to search by one having common authority to use property is legal authorization for an officer's search." According to the government, moreover, defendants' subsequent request that Deputy Barney stop searching their luggage also indicates that "consent was given in the first place" but later revoked. Thus, given the lack of coercion, Deputy Barney's "clear and unequivocal" search request, and the absence of any testimony to the contrary, the government contends the district court's finding that consent was involuntary or nonexistent is clearly erroneous.

■ "[A] search may be conducted without probable cause and without a warrant if the search is conducted pursuant to voluntary consent." *United States v. Guglielmo*, 834 F.2d 866, 868 (10th Cir.1987) (citation omitted). The voluntariness of consent "is a question of fact to be determined from the totality of the circumstances." *Werking*, 915 F.2d at 1409 (citation omitted). Accordingly, we will not substitute our judgment for the district court's factual findings unless, viewing the facts in a light favorable to the court's determination, those findings are clearly erroneous. *Walker*, 933 F.2d at 815. Moreover, "[a]t a hearing on a motion to

---

4. Although we may simply be disputing the court's choice of words, as we previously noted, there is a definite and audible response to Deputy Barney's request. The difficulty, however, is in understanding that response.

5. The district court's finding that defendant Ellis nonetheless felt threatened because he raised his hands upon exiting the vehicle does not flow from the evidence. The tape shows the defendant's action was so equivocal and so fleeting that no reasonable inference can be drawn from it.

6. The court also concluded the evidence of consent was neither clear nor convincing in light of the "evidence weighing against consent." *United States v. McKneely*, 810 F.Supp. 1537, 1544 (D.Utah 1993). However, that finding is irrelevant because we have abandoned the third prong of our previous consent analysis that there be convincing evidence that a defendant waived his constitutional rights. *See United States v. Price*, 925 F.2d 1268, 1270–71 (10th Cir.1991).

suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *Id.* (citation omitted).

█ The burden of proving that consent was given freely and voluntarily is always on the government. *Id.* at 818; *Werking,* 915 F.2d at 1409. Thus, for evidence obtained pursuant to a consent search to be admissible, the government must: (a) present "clear and positive testimony that consent was unequivocal and specific and freely given"; and (b) "prove consent was given without duress or coercion, express or implied." *United States v. Butler,* 966 F.2d 559, 562 (10th Cir.1992) (citation omitted).

As a general rule, we have found consent voluntary where there is no evidence of coercion and the testimony establishes consent was freely given. *See, e.g., United States v. Espinosa,* 782 F.2d 888, 892 (10th Cir.1986) (consent upheld where "[n]o threat, promise or force was used to obtain the consent" and defendant watched officer search vehicle without objecting); *Guglielmo,* 834 F.2d at 866 (suppression hearing testimony of arresting officer and DEA agent who interviewed defendant shortly after his arrest established voluntariness of defendant's consent to search); *Dewitt,* 946 F.2d at 1500.

Here, Deputy Barney's testimony that defendants voluntarily consented to the search is uncontroverted by facts because defendants offered no testimony to the contrary. Moreover, one critical fact, overlooked by the district court, makes defendants' consent quite apparent.

The videotape discloses that off camera one of the defendants forcefully spoke up during Deputy Barney's search and forbade him to go any further without a warrant. That statement is clearly and unmistakably audible, and its implication cannot be denied. Unless defendants initially gave their consent, they had no need to revoke it. But, more significantly, the words used, without more, belie any notion that consent was not given:

Hey look. *We gave you all permission* but now I don't want you going though my stuff until you get a search warrant. Can I get ... my stuff back, please? ... You're going though all my stuff. *I gave you permission that you could go through it at first.... [but now] you're doing an illegal search and seizure.*

(emphasis added). That statement itself renders the district court's contrary finding clearly erroneous. Therefore, we conclude defendants consented to the search that preceded the issuance of the warrant, and there is no "poisonous tree" in this case. Our conclusion leads us to consider the search which produced the evidence upon which the charges are based.

## IV.

### A.

█ The district court concluded Deputy Barney did not have probable cause to support the issuance of the warrant. We hold under the circumstances of this case, however, that point is insignificant because the district court's finding on probable cause is trumped by the good faith exception stated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon,* the Court held reviewing courts may "reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith." 468 U.S. at 925, 104 S.Ct. at 3422. In *United States v. Cook,* 854 F.2d 371, 372 (10th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989), we stated: "Assuming but not holding that the affidavit fails to establish probable cause, we believe the district court erred in refusing to apply the good faith exception to the exclusionary rule as set forth in *Leon.*" *See also United States v. Bishop,* 890 F.2d 212, 216 (10th Cir.1989) ("[R]esolution of whether there was probable cause supporting the warrant is not necessary to our decision ... because ... the agents' conduct clearly falls within the 'good faith exception' to the exclusionary rule."), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990); *United States v. Corral–Corral,* 899 F.2d 927, 931–32 (10th Cir.1990) (panel that

was divided on whether affidavit satisfied the probable cause requirement found "common ground for reversing the district court on the 'good faith exception' to the exclusionary rule"); *United States v. Craig*, 861 F.2d 818, 820 (5th Cir.1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter.").

"The first notion to be remembered in considering the good faith principle is the presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir.1985) (citation omitted). This presumption, though not absolute, "must carry some weight." *Id.; see also Leon*, 468 U.S. at 922, 104 S.Ct. at 3420 ("[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.") (internal quotations omitted).

Because "the 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization,'" *Cook*, 854 F.2d at 372 (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23), the reviewing court must examine "the text of the warrant and the affidavit to ascertain whether the agents might have 'reasonably presume[d] it to be valid.'" *Corral–Corral*, 899 F.2d at 932 (quoting *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421). In short, the question is whether "the officer is acting as a reasonable officer would and should act in similar circumstances." *Leon*, 468 U.S. at 920, 104 S.Ct. at 3419 (quoting *Stone v. Powell*, 428 U.S. 465, 539–40, 96 S.Ct. 3037, 3073–74, 49 L.Ed.2d 1067 (1976) (White, J., dissenting)).

However, when reviewing an officer's reliance upon a warrant, we must determine whether the underlying documents are "*devoid* of factual support, not merely whether the facts they contain are legally sufficient."

*Cardall*, 773 F.2d at 1133. Thus, "[i]t is only when [an officer's] reliance was *wholly unwarranted* that good faith is absent." *Id.* (emphasis added). *See also Bishop*, 890 F.2d at 217 (officer reasonably could have concluded affidavit contained sufficient indicia of probable cause to believe evidence of bank robbery would be found in apartment and automobile despite absence of proof of informant's veracity or reliability); *Corral–Corral*, 899 F.2d at 934–35 (officers relied in good faith upon warrant supported by affidavit which "was hurriedly prepared by law enforcement officials in the midst of a rapidly unfolding investigation," but which was neither "bare bones" nor "devoid" of facts); *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir.1986) (agents' reliance on warrant was objectively reasonable because warrant affidavit was not devoid of facts); *United States v. Wright*, 791 F.2d 133, 135 (10th Cir.1986) (When the affidavit relied upon by the magistrate who issued the warrant is not devoid of factual support, officers who execute the search warrant are "entitled to rely in good faith upon the decision of that magistrate as provided in *Leon* and *Cardall*."); *Cook*, 854 F.2d at 373–74. Indeed, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921, 104 S.Ct. at 3419.

A corollary to the presumption in favor of good faith reliance upon warrants is that "police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant" particularly where, "with the benefit of hindsight and thoughtful reflection, reviewing judges still cannot agree on the sufficiency of the affidavit." *Corral–Corral*, 899 F.2d at 939 (citation omitted); *see also Medlin*, 798 F.2d at 409 (good faith exception "come[s] into play directly" where appellate court "would be hard pressed to determine whether probable cause existed"); *Cook*, 854 F.2d at 374 (officer acted in good faith where, "[e]ven with time to reflect, judges now cannot agree on the sufficiency of the affidavit to establish probable cause");

*United States v. Hove,* 848 F.2d 137, 139 (9th Cir.1988) ("The test for reasonable reliance is whether the affidavit was sufficient to 'create disagreement among thoughtful and competent judges as to the existence of probable cause.'") (quoting *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422).

The good faith presumption is not without limits, however. An officer who knows or should have known that a search warrant was invalid may not rely upon the good faith exception to immunize his subsequent seizure of evidence. *Leon,* 468 U.S. at 919, 104 S.Ct. at 3419 ("If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.") (quoting *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975)).

Thus, in *United States v. Baker,* 894 F.2d 1144, 1149–50 (10th Cir.1990), we concluded a state officer who obtained a state search warrant to search property located in Indian Country had not acted in good faith in light of "clearly established law recognizing that such a warrant would be beyond the jurisdiction of the state court." Observing that the officer's conduct in seeking and executing the warrant was not "what should be expected of a reasonably well-trained officer with nine years experience in a county incorporating Indian lands," we noted, "where ... a reasonably well-trained law enforcement officer should himself have been aware that a proposed search would be illegal, a judicial official's concurrence in the improper activity does not serve to bring it within the rule of *Leon* and [*Massachusetts v.] Sheppard* [, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) ]." *Id.* at 1148–49 (citations omitted).

We see nothing in the record indicating Deputy Barney would have had any reason to believe the affidavit was constitutionally invalid or even questionable. Given the strong presumption in favor of warrant searches, the "great deference" accorded to a magistrate's probable cause determination, and the fact that the warrant affidavit contained sufficient facts at least to establish a reasonable suspicion of criminal activity, we hold a reasonable officer in Deputy Barney's shoes would have assumed the search warrant was valid. Thus, the district court erred in concluding otherwise.

### B.

The district court reasoned the good faith exception did not apply in part because it believed the magistrate had abandoned his neutral and detached role. However, instead of enumerating any specific instances of impropriety, the court relied solely upon its surmise that "Barney and officials of Sevier County have worked together closely for many years and have been involved together in numerous drug arrests." *McKneely,* 810 F.Supp. at 1547. Based on that surmise, the court concluded the magistrate only could have executed an affidavit so lacking in probable cause by substituting Deputy Barney's assessment for his own independent analysis of the situation.

There is, however, no evidence in the record to support the court's belief or to otherwise establish an abandonment of neutrality. *Compare Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 327, 99 S.Ct. 2319, 2325, 60 L.Ed.2d 920 (1979) (town justice who participated in search of premises "was not acting as a judicial officer but as an adjunct law enforcement officer"). The court's conclusion, moreover, is at odds with two equally well-established legal principles: (a) the "great deference" accorded magistrates;[7] and (b) the

---

7. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–2333, 76 L.Ed.2d 527 (1983) ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed," not to second-guess the magistrate.) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960),

*overruled on other grounds,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)); *United States v. Corral–Corral,* 899 F.2d 927, 931 (10th Cir.1990) ("[A] judicial officer's decision to issue a search warrant is afforded 'great deference.'"); *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984) (Because "[r]easonable minds frequently may differ

strong presumption in favor of admitting evidence seized by warrant.[8]

Moreover, in *Cardall,* we rejected an argument that the magistrate abandoned his neutral and detached role, concluding the suggestion was "based upon the conclusion the warrant was insufficient—a view with which we have already dispensed." 773 F.2d at 1133; *see also United States v. Rome,* 809 F.2d 665, 668–70 (10th Cir.1987) (search warrant issued pursuant to phone affidavit in violation of Fed.R.Crim.P. 41(c)(2) did not evidence bad faith or call into question magistrate's neutrality or detachment where magistrate and agent seeking warrant were not entirely familiar with the rule, did not have a copy in their possession, and both complied with the spirit, if not letter, of the rule).

Other circuits have rejected similar attacks on a magistrate's neutrality. For instance, in *United States v. Brown,* 832 F.2d 991, 997 (7th Cir.1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 243 (1988), the defendant submitted into evidence hundreds of search warrants issued by the magistrate, claiming the magistrate routinely found probable cause based on "form" warrant applications. The defendant also suggested an inference could be drawn that the police knew of the magistrate's tendency to approve warrants without critical analysis. The court, however, determined defendant's inference was not supported by the evidence. To the contrary, the court adopted the district court's finding that "the [hundreds of] warrants [in evidence] more convincingly prove[d] that [the issuing judge] ha[d] extraordinary experience in reviewing warrant applications because of the volume of applications submitted to her, rather than that she routinely issue[d] invalid warrants." *Id.* Thus, although "it might be difficult for a

litigant to establish how the municipal judge abandoned her neutral and detached role in evaluating warrant applications," the court concluded defendant's evidence was "insufficient to preclude the good faith exception." *Id.*

Also, in *United States v. Sager,* 743 F.2d 1261 (8th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985), the Eighth Circuit rejected a claim that mirrors the district court's reasoning in the instant case. There, the defendants argued that the affidavit was "so insufficient that any magistrate who would have acted upon it favorably must have been a rubber stamp." *Id.* at 1266–67. The court concluded the defendants' contention was "only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable, an argument that we have already rejected." *Id.* at 1267.

In the absence of any evidentiary facts to the contrary, the district court's reasoning in this case is unsubstantiated surmise. The conclusion reached by the court cannot be upheld because the affidavit supporting the warrant was not so lacking in indicia of probable cause that Deputy Barney's reliance upon it was entirely unreasonable.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** for further proceedings.

---

on the question whether a particular affidavit establishes probable cause, ... the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination.").

**8.** *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of

doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."); *Gates* 462 U.S. at 236, 103 S.Ct. at 2331 (" 'A grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.") (quoting *Ventresca,* 380 U.S. at 108, 85 S.Ct. at 746); *Leon,* 468 U.S. at 913–14, 104 S.Ct. at 3416.