60 F.3d 837
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Robert SCHMITZ, Defendant-Appellant.
 No. 94-1505.
 United States Court of Appeals, Tenth Circuit.
 July 11, 1995.
 
 Before BALDOCK, SETH, and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Defendant Mark Robert Schmitz appeals the district court's denial of his motion to suppress. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 
 2
 On April 13, 1994, Defendant was driving a Lincoln Town Car northbound on Interstate 25 between Pueblo and Colorado Springs, Colorado. Around 7:00 p.m., Colorado State Patrol Trooper Lloyd B. Sumner observed that Defendant's Lincoln did not have a front license plate as required by Colorado law. He pulled his motorcycle in behind Defendant and activated his emergency lights. Defendant pulled over.
 
 
 3
 Trooper Sumner advised Defendant he had been stopped because the Lincoln did not have a front license plate. Defendant replied "[y]es, that's my understanding, you must have two license plates on your vehicle in Colorado." Aplt.App. at 50. Trooper Sumner was surprised by this remark because the majority of people he stops for this violation do not know Colorado requires two license plates on a passenger vehicle.
 
 
 4
 Trooper Sumner asked Defendant for his driver's license and registration. Defendant handed Trooper Sumner his Wisconsin driver's license, told Trooper Sumner he had rented the car in Tucson, Arizona, and handed him the car rental papers. Trooper Sumner walked back to his motorcycle and checked Defendant's license for outstanding warrants. The check revealed Defendant had no outstanding warrants, his license was good, the plates were assigned to the Lincoln, and that the Lincoln was listed to a rental company. Id.
 
 
 5
 Trooper Sumner returned to the Lincoln and asked Defendant where he had come from. Defendant stated he had flown down to Arizona to look at some colleges. Trooper Sumner asked Defendant to put the key in the ignition so that he could observe the mileage on the odometer. The mileage was consistent with Defendant's statement that he had rented the car in Tucson. Trooper Sumner was suspicious because he knew Tucson was a known drug distribution center. Nevertheless, Trooper Sumner gave Defendant an oral warning, handed back his license and rental papers, told him to have a good trip and to inform the rental company that the Lincoln was missing a front license plate.
 
 
 6
 As Trooper Sumner glanced into the Lincoln, however, he noticed only a small wardrobe bag and another small bag in the passenger seat and kept feeling "that possibly there was something else." Id. at 51-52. In his "experience contacting motorists," Trooper Sumner felt Defendant was "almost overly casual" and was volunteering information. Id. at 52. At this point Trooper Sumner asked Defendant why he decided to drive back to Wisconsin rather than fly. Defendant told him that he did not like to fly. Defendant volunteered that his plan was to drive to Denver, spend the night, and head back to Wisconsin.
 
 
 7
 As he was about to return to his motorcycle, Trooper Sumner asked Defendant if he was transporting drugs, guns, or $10,000 or more in cash. Defendant said no. Trooper Sumner asked Defendant if he could search the inside of the Lincoln. Defendant said yes. He asked Defendant to step out of the vehicle and to open the trunk. Defendant indicated that he did not know where the release button was to open the trunk. Trooper Sumner replied "[w]ell, why don't you just grab the keys out of the ignition and we'll open it with the keys." Id. at 53.
 
 
 8
 Defendant retrieved the keys from the ignition and walked back to the trunk. Defendant told Trooper Sumner "[i]t was my impression that you just wanted to look through the car. I didn't know you wanted to look through the trunk. I don't know if I want you to look through the trunk." Id. Trooper Sumner replied that he wanted to look through the trunk, but that it was completely up to Defendant and voluntary on his part and that "[i]t wasn't necessary that he open it whatsoever." Id. Defendant hesitated for a couple of seconds and then said "[w]ell, all right." Id. at 54. Defendant inserted the key in the trunk latch and stated "I want you to know I don't know where the bags--or where the stuff in the trunk came from." Id.
 
 
 9
 Defendant opened the trunk. Trooper Sumner saw several nylon duffel bags inside. Trooper Sumner unzipped one of the bags and asked Defendant if it was his. Defendant "stammered a little bit" and stated "[n]o, I don't know how they got there." Id. Trooper Sumner looked into the unzipped duffel bag and saw bundles of marijuana wrapped in plastic. He arrested Defendant, handcuffed him, and retrieved a Colorado State Patrol "Waiver of Rights and Consent to Search" form from his motorcycle. He handed the form to Defendant and Defendant signed it.
 
 
 10
 On April 19, 1994, a federal grand jury indicted Defendant for possession of marijuana with intent to distribute, 21 U.S.C. 841(a)(1). In May 1994, Defendant moved to suppress the marijuana, contending it was the fruit of a prior unlawful detention. The government opposed the motion.
 
 
 11
 At the evidentiary hearing, the district court found that Defendant was free to leave once Trooper Sumner returned his driver's license and rental papers. The court found that Trooper Sumner's subsequent questioning about whether Defendant was transporting drugs, guns, or $10,000 more in cash was part of a voluntary exchange--"just general conversation." Id. at 100. The court further found that Defendant knowingly and voluntarily consented to the search of the trunk of the Lincoln. Id. at 103-04. As a result, the court denied Defendant's motion to suppress the marijuana seized during the search. Id. at 104.
 
 
 12
 The parties entered into plea negotiations. Defendant agreed to plead guilty to the indictment count, conditioned upon his right to appeal the district court's denial of his motion to suppress. The district court sentenced Defendant to forty-one months imprisonment. This appeal followed.
 
 
 13
 On appeal, Defendant contends the district court erred in denying his motion to suppress. Specifically, Defendant contends Trooper Sumner unlawfully detained him for questioning beyond the time necessary to conduct the initial traffic stop and that the continued detention was neither supported by reasonable suspicion nor voluntary consent.[2] As a result, Defendant maintains the continued detention violated his Fourth Amendment rights and hence the district court erred by not suppressing the fruits of the unlawful detention--i.e., the marijuana. We disagree.
 
 
 14
 "In reviewing [Defendant's] ... Fourth Amendment claim, we review all evidence in a light most favorable to the district court's findings, ... and uphold the factual findings of the district court unless they are clearly erroneous." United States v. Dirden, 38 F.3d 1131, 1139 (10th Cir.1994) (citations omitted). "The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo." Id. at 1139. "[W]henever the government relies on the consent of the defendant to validate a search the government bears the burden of proving that the consent 'was freely and voluntarily given.' " United States v. Sandoval, 29 F.3d 537, 539 (10th Cir.1994) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)).
 
 
 15
 "A traffic stop is an investigative detention analogous to a Terry stop." United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir.), cert. denied, 114 S.Ct. 1862 (1994); see also Berkemer v. McCarty, 468 U.S. 420, 439 (1983).
 
 
 16
 An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.
 
 
 17
 Gonzalez-Lerma, 14 F.3d at 1483 (quoting United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir.1988)). Further questioning is permissible, however, if: (1) "during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity"; or (2) "the driver voluntarily consents to the officer's additional questioning." Sandoval, 29 F.3d at 540.
 
 
 18
 To determine whether a driver and police officer are engaged in a consensual encounter in the context of a traffic stop, we focus on the totality-of-the-circumstances. Sandoval, 29 F.3d at 540 (citing Florida v. Bostick, 501 U.S. 429, 439 (1991)). Once a police officer returns the license and other documentation to a driver during a traffic stop, further questioning by the officer or a request for consent to search "may be an 'ordinary consensual encounter between a private citizen and a law enforcement official' so long as a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." United States v. McKneely, 6 F.3d 1447, 1451 (10th Cir.1993) (quoting United States v. Turner, 928 F.2d 956, 958 (10th Cir.), cert. denied, 502 U.S. 881 (1991)).
 
 
 19
 In United States v. Werking, 915 F.2d 1404, 1408 (10th Cir.1990), we concluded on facts similar to the instant case that the defendant, Werking, had voluntarily consented to additional questioning by a police officer during a routine traffic stop. In that case, Werking was driving a 1983 Volvo with California commercial license tags on Interstate 80 in Wyoming. Officer Dyer pulled Werking over to determine whether the Volvo had a "one-trip" permit sticker, which is required for vehicles brought into Wyoming for sale. In response to questioning, Werking told Officer Dyer he was delivering the car to a friend. Dyer asked Werking for verifying documentation. Werking handed him his registration papers, driver's license, and a letter from the registered owner authorizing him to drive the Volvo.
 
 
 20
 Officer Dyer returned to his vehicle to check Werking's license for outstanding warrants. After a check revealed no outstanding warrants or other problems, Officer Dyer handed the driver's license and other documents back to Werking. Dyer asked Werking if he was transporting firearms, narcotics, or large sums of money in the vehicle. Werking said no. Dyer asked Werking if he could search the trunk. Werking said yes. Dyer discovered seventy-five pounds of marijuana in the trunk.
 
 
 21
 Werking moved to suppress the marijuana and the district court denied the motion. Werking entered a plea of guilty to possession with intent to distribute marijuana, conditioned upon his right to appeal the district court's denial of his motion to suppress. On appeal, Werking contended Officer Dyer's continued questioning of him "after returning ... [his] driver's license and other papers violated his fourth amendment rights." Id. at 1408. As a result, Werking contended the marijuana discovered during the ensuing search of the trunk of the Volvo should have been suppressed.
 
 
 22
 We rejected Werking's contention, explaining that Werking was free to leave once Officer Dyer returned his driver's license and other papers. Id. at 1409. We explained that once Werking's documentation was returned to him, "the initial investigative detention was concluded" and "the encounter between Werking and Dyer became an ordinary consensual encounter between a private citizen and a law enforcement official." Id. at 1408. We found no evidence that Werking "was constrained by an overbearing show of authority." Id. at 1409. As a result, we concluded Werking voluntarily consented to Dyer's continued questioning and found no Fourth Amendment violation. Id. We therefore affirmed the district court's denial of Werking's motion to suppress. Id.; see also McKneely, 6 F.3d at 1451 (defendants not illegally detained because they were free to leave once their documentation was returned to them during the traffic stop and no coercive circumstances were present).
 
 
 23
 Applying these principles to the instant case and focusing upon the totality-of-the-circumstances, we conclude the district court did not clearly err in finding that Defendant voluntarily consented to Trooper Sumner's continued questioning. Aplt.App. at 100-104; Sandoval, 29 F.3d at 540; McKneely, 6 F.3d at 1451. Defendant was free to leave once Trooper Sumner returned his driver's license and rental papers to him. Werking, 915 F.2d at 1409; McKneely, 6 F.3d at 1451. At that point "the initial investigative detention was concluded" and "the encounter between [Defendant] and [Sumner] became an ordinary consensual encounter between a private citizen and a law enforcement official." Werking, 915 F.2d at 1408.[3] Indeed, at the same time Trooper Sumner returned Defendant's driver's license and rental papers, he told Defendant to "have a good trip," which further conveyed to Defendant that the traffic stop had come to an end and that Defendant was free to leave. See United States v. Bell, 969 F.2d 257, 259 (7th Cir.1992) (encounter found to be consensual where defendant told she was free to leave). There is no evidence in the record that Trooper Sumner constrained Defendant by a coercive or overbearing show of authority. McKneely, 6 F.3d at 1451; Werking, 915 F.2d at 1409.[4] We therefore hold the district court did not clearly err in finding that Defendant voluntarily consented to Trooper Sumner's continued questioning. As a result, we hold Defendant was not illegally detained in violation of the Fourth Amendment. Sandoval, 29 F.3d at 540.
 
 
 24
 The district court further found that Defendant knowingly and voluntarily consented to the search of the trunk of the Lincoln. Aplt.App. at 103-04. In his reply brief, Defendant concedes that he voluntarily consented to the search of the Lincoln if we find the continued detention to have been lawful. Aplt. Reply Br. at 6 ("Schmitz did not and does not assert lack of consent independent from the unlawful detention. If the Court should find the continued detention to have been lawful, then the matter is closed and Schmitz loses."). We hold Defendant voluntarily consented to the search of the trunk of the Lincoln. As a result, we AFFIRM the district court's denial of Defendant's motion to suppress.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Defendant contended below that Trooper Sumner's initial stop of his car was pretextual. The district court ruled that the stop was not pretextual. Defendant does not challenge this ruling on appeal. Aplt. Br. at 10 n. 3. Therefore, the district court's resolution of this issue stands. United States v. Cook, 997 F.2d 1312, 1316 (10th Cir.1993)
 
 
 [3]
 Defendant contends Werking was wrongly decided and should be overruled. However, "one panel of this court cannot overrule [the decision of] another panel." United States v. Zapata, 997 F.2d 751, 759 n. 6 (10th Cir.1993)
 
 
 [4]
 In Werking, we quoted United States v. Mendenhall, 446 U.S. 544, 555 (1980), to illustrate that coercive circumstances could include "the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled." Werking, 915 F.2d at 1408. These circumstances are merely examples of criteria that may be considered under the totality-of-the-circumstances analysis. Sandoval, 29 F.3d at 541. None of these circumstances are present in the instant case