FILED
United States Court of Appeals
Tenth Circuit

February 19, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES ALLEN STEVAHN,

    Defendant-Appellant.

No. 08-8036

(D. Wyoming)

(D.C. No. 07-CR-157-D)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **McWILLIAMS** and **GORSUCH**, Circuit Judges.

---

James Stevahn appeals the district court's denial of his motion to suppress evidence that officers seized from his Gillette, Wyoming home computer, which, according to the officer's affidavit supporting the search warrant, had been targeted as a "download candidate" for child pornography by "law enforcement officers from around the world." Rec. vol. I, doc. 25, Att. 1 (Ex. B, Huff Aff. ¶ 4t). While we acknowledge the infirmity of the search warrant's probable

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

cause, we hold the seized evidence admissible under the good faith exception the Supreme Court outlined in *United States v. Leon*, 468 U.S. 897 (1984).

## I. FACTUAL BACKGROUND

On March 19, 2007, Special Agent Randy Huff, of the Wyoming Division of Criminal Investigation, received an assignment to investigate Mr. Stevahn's Gillette, Wyoming computer that "had been seen as a download candidate by other law enforcement officers from around the world."  Rec. vol. I, doc. 25, Att. 1 (Ex. B, Huff Aff. ¶ 4t).  According to Agent Huff's affidavit in support of a March 27, 2007 application for a search warrant, "[t]he computer was observed by officers to have all or a portion of a movie that is suspected of being child pornography. . . .  Two police officers observed that computer as a download candidate for the child porn movie with the SHA1 value H6v . . . EJTN [and Internet protocol] address 69.45.198.82."  *Id.*

SHA1 (or SHA-1) is a mathematical algorithm that stands for  Secure Hash Algorithm (SHA).  "The United States has adopted the SHA-1 hash algorithm" for "computing a condensed representation of a message or data file"; thus it can act "like a fingerprint."  *See United States v. Warren*, No. 4:08 CR 189 RWS, 2008 WL 3010156, at *1 n.4 (E.D. Mo. July 24, 2008).  The Internet protocol ("IP") address Agent Huff noted designates "[a]n Internet location – called an Internet protocol address[, which] is a string of integer numbers separated by periods." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 871 (9th Cir. 1999).

The circuit court of Campbell County issued a warrant to search Mr. Stevahn's apartment on the same day, and, later that day, officers seized computer hard drives and storage devices alleged to contain images of child pornography. Mr. Stevahn was charged with one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2552A(a)(2)(A) and (b)(1) (count 1), and two counts of Possession of Child Pornography in violation of 18 U.S.C. § 2552A(a)(5)(B) and (b)(2) (counts 2 and 3). Mr. Stevahn entered a conditional plea of guilty to count 1 (Receipt of Child Pornography), subject to this appeal. He received a sentence of 235 months' imprisonment, plus supervised release for a term of life.

## II. DISCUSSION

Mr. Stevahn appeals the district court's application of the *United States v. Leon* exception to the exclusionary rule, which allows admission of otherwise excludable evidence when the officers acted in good faith. 468 U.S. 897 (1984). The district court determined that Agent Huff's affidavit submitted in support of the warrant was lacking in probable cause, but that it was not so lacking in indicia of probable cause so as to make Agent Huff's belief in it unreasonable. We agree with the district court's reasoning.

A.     Standard of Review

On an appeal from the denial of a motion to suppress, we review factual findings for clear error in the light most favorable to the government. *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005). We review the warrant's

probable cause requirement "very deferential[ly]," searching only for a substantial basis that the underlying affidavit provided probable cause. *United States v. Riccardi*, 405 F.3d 852, 860 (10th Cir. 2005). Finally, even if the above do not indicate probable cause, we may uphold the search if de novo review indicates that *Leon* applies. *Id.*

B. The Affidavit did not Provide Sufficient Evidence of Probable Cause.

Although we could simply affirm the district court on the basis of the good faith exception, our circuit encourages "the policy of avoiding 'freezing' Fourth Amendment jurisprudence, discussed by the Court in *Leon*, [which] compels us in this case to resolve the constitutional issue" so that magistrate judges and law enforcement officers are given some guidance in their decisionmaking. *United States v. Dahlman*, 13 F.3d 1391, 1398 (10th Cir. 1993); *see Leon*, 468 U.S. at 924 ("[N]othing will prevent reviewing courts from deciding the [Fourth Amendment] question before turning to the good-faith issue."). Further, in this case, it would "be difficult to determine whether [Agent Huff] acted reasonably without resolving the Fourth Amendment issue." *Leon*, 468 U.S. at 925. Thus, like the district court, we first consider the affidavit Agent Huff submitted in support of his application for the search warrant.

According to the district court, the first third of the warrant is "boilerplate" and the officer "just fill[ed] in the blanks." Rec. vol. III, at 11. It also outlines the process through which Agent Huff might identify SHA1 signatures: "Once a

-4-

matching set of digital signatures was identified, [Agent Huff] could use publicly available software to request a list of internet network computers that are reported as download candidates of known images. This feature allows [Agent Huff] to conduct undercover operations that involve images of child sexual abuse." Rec. vol. I, doc. 25, Att. 1 (Ex. B, Huff Aff. ¶ 4n).

The second part of the affidavit notes, but fails to explain, how "officers from around the world" came to perceive Mr. Stevahn's computer as a "download candidate:"

### CURRENT INVESTIGATION

t) On March 19, 2007 your Affiant was assigned to investigate a computer located in Gillette, Wyoming that had been seen as a download candidate by other law enforcement officers from around the world. The computer was observed by officers to have all or a portion of a movie that is suspected of being child pornography on October 25 2006. Two police officers observed that computer as a download candidate for the child porn movie with the SHA1 value H6V2ZQEXMSQVLRY7GJ5FUWCPCSTIETJN. The computer was identified while using IP address 69.145.198.82.

*Id.* ¶ 4t. The balance of the affidavit describes the computer items necessary for a computer expert to conduct a thorough investigation of activities conducted on a computer.

At the hearing on the motion to suppress, the district court expressed its dismay with the affidavit more frankly: "What we're dealing with here . . . is a boiler plate affidavit where you plug in the address, you have a place where you can throw in a photograph, and the language is markedly similar, if not identical, to language presented to the Court in other cases." Rec. vol. III, at 5. The court

determined, however, that the use of the boilerplate language standing alone, did not cause concern, rather, the affidavit's omissions troubled the court. Rec. vol. I, doc. 29, at 4-5.

The court agreed with Mr. Stevahn's argument that no information was given as to the investigative techniques the officers used, the software the officers used, what it was used for, or its reliability, not to mention the identity of the officers or where they were from. *See id*. at 4 ("The use of such a generic label breeds suspicion that the affiant knew very little about them."). And, although the "SHA1 value" has a certain "reliability," this is limited as to whether the tagged item is a pornographic movie or not, *see* Rec. vol. I, doc. 25, Att. 1 (Ex. B, Huff Aff. ¶ 4t); this has no relation to Mr. Stevahn's computer. Accordingly, we agree with the district court's depiction of the affidavit's verbiage: "This language is awfully general." Rec. vol. III, at 14.

In addition, defense counsel offered simple alternatives that would have saved the affidavit:

> If we're not going to identify the officers or where they're from or what kind of investigative techniques they used then at least let's identify the manner in which they identified this defendant's computer because what we're left with, . . . is this agent's manner, and his manner doesn't tell us what the name of the software is that he's using or the reliability of that software.
>
> . . . .
>
> [W]hat we're asking for isn't going to be earth-shattering here

. . . . All the officer has to do is say, "I received this information from officers around the world who informed me they used 'X' software to identify this computer as one trafficking these illicit images, and that software is known to be reliable."

Rec. vol. III, at 6, 9. Noting the district court's experience in these matters and its concerns, officers should consider including such indicia of reliability going forward in these cases.

As to independent corroboration of Agent Huff's statement, we agree with the defendant that there is no corroboration apart from certain unidentified officers somewhere in the world having seen Mr. Stevahn's computer as an undefined "download candidate" by virtue of the unknown unidentified publicly available software. We also agree with the district court that the affidavit facially lacked probable cause because there was "no information connecting information regarding [Agent] Huff's experience to the observations of the 'two officers' or officers 'around the world.'" Rec. vol. I, doc. 29, at 5.

The government's argument in support of the sufficiency of the evidence in support of probable cause is similarly unhelpful. Arguing that "[t]he district court and [Mr. Stevahn] find fault (and lack of probable cause) with the absence of language which connects the *Background* portion of the affidavit with the *Current Investigation* portion," the government argues that it "believe[s] that such a conclusion can only be reached by interpreting the affidavit in a hypertechical [sic] rather than a common sense manner." Aple's Br. at 10. The district court's

rationale is neither "hypertechical" nor hypertechnical, it reflects practical, real concerns that should be addressed.

Finally, we agree that Agent Huff's inability to testify at the hearing left these deficiencies unremedied. "While an assessment of the affidavit's showing of probable cause will be made looking only at the affidavit itself, testimony from the affiant would aid the Court in determining whether or not the affidavit's deficiencies were merely a function of sloppy draftsmanship." Rec. vol. I, doc. 29, at 5-6 n.1. Accordingly, we hold that the district court's assessment that the affidavit lacked sufficient evidence to provide probable cause was correct.

C.     The *Leon* Exception to the Exclusionary Rules Applies.

We turn finally to the application of the *Leon* exception to the exclusionary rule, which is designed to deter future unlawful police misconduct. 468 U.S. at 906 (noting that the exclusionary rule operates as a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved"). Evidence seized pursuant to an invalid warrant need not always be suppressed. *Herring v. United States*, 129 S. Ct. 695, 701 (2009) ("The fact that a Fourth Amendment violation occurred – *i.e.*, that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies. Indeed, exclusion has always been our last resort, not our first impulse, and our precedents establish important principles that constrain application of the exclusionary rule." (internal

quotation marks and citations omitted)).  "Inherent in *Leon*'s exception to the exclusionary rule is the view that permitting people to get away with crime is too high a price to pay for errors that . . . stem from negligence rather than disdain for constitutional requirements."  *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2008) (internal quotation marks omitted).

"When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant.  We (perhaps confusingly) called this objectively reasonable reliance 'good faith.'"  *Herring*, 129 S. Ct. at 701 (quoting *Leon*, 468 U.S. at 922, and n.23); *United States v. Rowland*, 145 F.3d 1194, 1206 (10th Cir. 1998) ("In *Leon*, the Supreme Court modified the Fourth Amendment exclusionary rule by holding that evidence seized pursuant to a search warrant later found to be invalid need not be suppressed if the executing officers acted in objectively reasonable, good-faith reliance on the warrant.").

In *Leon*, the Court also identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) to contain false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so

lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *See* 468 U.S. at 923. In *Herring*, the Supreme Court clarified that abuses that give rise to the exclusionary rule are narrow, and most typically involve flagrant police misconduct:

> An error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the rule in the first place. And in fact since *Leon*, we have never applied the rule to exclude evidence obtained in violation of the Fourth Amendment, where the police conduct was no more intentional or culpable than this.

129 S. Ct. at 702.

Mr. Stevahn appears to raise situation (3) (so lacking in indicia of probable cause) and (4) (facial deficiency) together. We briefly examine these two situations in tandem. Mr. Stevahn's arguments center around the reliability of the affidavit, and its lack of corroboration, without recognizing the agent's ability to rely on the issuing judge's determination.

"[W]hen reviewing an officer's reliance upon a warrant, we must determine whether the underlying documents are "*devoid* of factual support, not merely whether the facts they contain are legally sufficient. Thus, it is only when an officer's reliance was *wholly unwarranted* that good faith is absent." *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993) (emphasis in original) (internal quotation marks and citations omitted). "A corollary to the presumption

in favor of good faith reliance upon warrants is that police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant particularly where, with the benefit of hindsight and thoughtful reflection, reviewing judges still cannot agree on the sufficiency of the affidavit." *Id.* (internal quotation marks omitted).

We agree with the district court that Agent Huff's affidavit, while in part boilerplate, was not "bare bones." Rec. vol. I, doc. 29, at 7; *United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (A bare bones affidavit is one that contains "wholly conclusory statements, which lack the facts and the circumstances from which a magistrate can independently determine probable cause." (quoting *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993)). A "bare bones" affidavit is usually insufficient because it falls into *Leon*'s third exception, as not providing "the magistrate with a substantial basis for determining the existence of probable cause." *See Wilhelm*, 80 F.3d at 123 (finding "bare bones" affidavit insufficient for this reason).

Agent Huff's affidavit was not so wholly conclusory that a neutral magistrate could not independently determine probable cause. As the district court noted, the affidavit included a detailed accounting of the various investigatory techniques Agent Huff used and "set forth the reasons for his belief that a search of [Mr. Stevahn's] apartment would yield evidence of child

-11-

pornography. Additionally, it included additional investigatory steps taken to link the observed IP address to [Mr. Stevahn's] computer." Rec. vol. I, doc. 29, at 7. We do not believe that this is a case where Agent Huff acted objectively unreasonably, thus his conduct did not "trigger the exclusionary rule." *Herring*, 129 S. Ct. at 702 (requiring "police conduct . . . be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" to trigger the exclusionary rule).

## III. CONCLUSION

The problems with the warrant were not so egregious so as to restrict the operation of *Leon*'s good faith exception. Thus, we therefore AFFIRM the district court's denial of Mr. Stevahn's motion to suppress.

Entered for the Court,


Robert H. Henry
Circuit Judge