**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 26 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

DONALD VERNON VANNESS, a/k/a
MICHAEL D. HERRERA,

       Defendant - Appellant.

No. 02-2008

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. CRIM. NO. 00-1571 LH)**

Susan Bronstein Dunleavy, Assistant Federal Public Defender, Albuquerque, New
Mexico, for Defendant-Appellant.

David N. Williams (David C. Iglesias, United States Attorney, and Laura Fashing,
Assistant U. S. Attorney, with him on the briefs), Albuquerque, New Mexico, for
Plaintiff-Appellee.

Before **LUCERO, HOLLOWAY** and **ANDERSON**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

This is an appeal involving a denial of a suppression motion. Vanness pleaded guilty

and was sentenced to concurrent terms of 33 months in prison and three years of supervised

release for possession of methamphetamine with intent to distribute and possession of marijuana with intent to distribute. Brief of Appellant (Attachment: A at 1-3). In his plea agreement, Vanness reserved his right to appeal the district court's denial of his motion to suppress evidence. II R. (Doc. 88 at 2). Defendant's primary contention on appeal is that the evidence should have been suppressed because the stated reason for the traffic stop was violation of a local noise ordinance which, he contends, is unconstitutionally vague and overly broad.

# I

## BACKGROUND

On November 15, 1999, at about 10:25 p.m., Officer Jerry L. Belyeu, a police officer for the Town of Bernalillo, New Mexico, was assisting another officer on a traffic stop when he heard very loud music. III R. 26-27, 30-31. (Transcript of 6/13/01 proceedings). Officer Belyeu estimated that he was approximately 150 yards[1] from Vanness' vehicle when he first heard the music and observed the car. III R. 31 (Belyeu stated that he actually heard the music for between three to five seconds before he saw Vanness' vehicle. *Id.*). Belyeu later conducted two tests, with a laser and with his car's odometer, which indicated that he was 450 to 500 feet away from Vanness' car when he first heard the music and observed the vehicle. *Id.* at 31-33.

Officer Belyeu testified that he could hear Vanness' car radio "over normal

---

[1] Officer Belyeu originally put 150 *feet*, not yards, in his report. The correct distance was 150 *yards*. *See* III R. 32, 54-57 (Transcript of 6/13/01 proceedings).

conversation between myself and somebody standing next to me. I could hear it over my police radio." III R. 33 (Transcript of 6/13/01 proceedings). Subsequently, Belyeu pulled Vanness' vehicle over, *id.,* in an area which was within approximately fifteen to twenty yards of some residences and close to the grounds of a school. *Id.* at 48-49.

After pulling Vanness over, Officer Belyeu approached Vanness' vehicle, where Vanness was sitting in the driver's seat and Shauna Kelley was seated next to him in the front passenger's seat. Belyeu testified that he identified himself and told Vanness he was being stopped because his radio was playing extremely, unreasonably loud. III R. 34-35. Officer Belyeu also testified that he asked Vanness whether there was something wrong with Vanness' vehicle. *Id.* at 35. Vanness replied that his stereo and one of his speakers were malfunctioning and that he was attempting to find a location where he could work on the car. *Id.*

Officer Belyeu then asked for Vanness' driver's license, registration, and insurance. *Id.* at 36. Vanness, according to Belyeu, said he did not have one because his wallet had been stolen in Utah. *Id.* He then told Officer Belyeu that his name was Michael D. Herrera. Officer Belyeu told Vanness that he was parked in an area known "as being a high-traffic area for narcotics", *id.* at 37-38, and then asked "'Do you have anything in this vehicle I should be aware of, weapons, drugs, anything like that?'" *Id.* at 40. Vanness, according to Officer Belyeu, stated that Belyeu was welcome to search his car. *Id.*

Officer Belyeu checked with his dispatch office whether a "Michael D. Herrera" was

licensed in either Utah or New Mexico and learned that there was no record on file of a license in either state. III R. 40-41. At this time, Officer Belyeu requested back up and Officers Palmer and Munk arrived soon thereafter. *Id.* at 41. According to Belyeu, Vanness provided Officer Palmer with a different spelling of the name "Michael D. Herrera" and told him he had a driver's license in New York, but again a records check revealed no such license. *Id.* at 42. Belyeu also testified that Vanness told Officer Palmer that he was welcome to search the vehicle. *Id.* at 43.

Officers Belyeu and Palmer subsequently searched Vanness's car and found seven knives, a small tin box with "[r]esidue of a green leafy substance which" Officer Belyeu "believed to be marijuana," and a "bag with a white powdery substance." III R. 43-44 (Transcript of 6/13/01 proceedings).[2] Officer Munk observed "a very large speaker in the back" of the vehicle "which was taking up most of the rear area of the vehicle, a very large base-type [sic] speaker" consistent with the noise that was emanating from the vehicle. III R. 95. Officer Palmer discovered Vanness's wallet, which contained his suspended Colorado driver's license, in Kelly's jacket. III R. 44-45. The government says that defendant was then arrested for "interference with officer" or concealing his identity. *Id.* at 46.

On March 29, 2001, Vanness filed a motion to suppress all the evidence seized from the vehicle he was driving on the grounds that the "initial stop and seizure of the defendants

---

[2] The white powdery substance was methamphetamine, which was the subject of count I of the indictment. *See* II R. (Sealed Presentence Report at ¶¶ 9, 10). Kelly later admitted that she had marijuana hidden in a body cavity. *See id* at ¶ 9. The marijuana was the subject of count II of the indictment. I R. (Doc. 1 at 2).

was unconstitutional as there was no reasonable suspicion that the defendants had violated the unreasonable noise ordinance 2-1-7 because there is no such ordinance in the town of Bernalillo" and "[i]n the alternative, if the court finds ordinance 2-1-7 . . . to be a valid ordinance in the town of Bernalillo, the same ordinance is unconstitutionally vague and over-broad, and does not warrant good-faith reliance by any law enforcement officials."  I R. (Doc. 48).  The government opposed Vanness's motion.

The district judge issued an order denying Vanness's motion to suppress evidence based on the reasons the judge "stated on the record" at a hearing on June 13, 2001.  Brief of Appellant (Attachment C: Order denying suppression of evidence).  During this hearing, the district judge found credible the police officers' testimony that they heard music from Vanness's car from 450 feet away and that Vanness consented to the search of the car.  III R. 137-38 (Transcript of 6/13/01 proceedings).  The judge also found that the testimony of Vanness and Kelley, which contradicted the police officers' testimony, was not credible.  *Id.* at 142.  The judge held that the noise prohibition of Section 2-1-7 of Town of Bernalillo Ordinance No. 62 was "valid and not unreasonably vague or overbroad."  *Id.* at 139.  The judge found that "[t]he ordinance does not, in my opinion, encourage arbitrary and discriminatory enforcement, and I find that the officer initially stopped the Defendant because of the loud noise coming from his vehicle."  *Id.* at 139-40.

Conceding that he did not know what Vanness' citation was issued for,[3] the district

---

[3] The reason for the district judge's confusion regarding the citation is that the Municipal Clerk's computer records revealed that the ticket was for a violation of Town of Bernalillo

judge stated that "the vehicle was stopped, according to the police officers, for unreasonable noise, and there was certainly reasonable ground to believe that the ordinance that has been used by both the Government and the Defense in this case, 2-1-7, was being violated." *Id.* at 140. The district judge cited this court's unpublished decision *United States v. Briscoe,* 216 F.3d 1088 (10th Cir. 2000) (Table), for the proposition that "the Fourth Amendment looks not at the subjective belief of the officer, but the objective evidence." III R. 140. Therefore, the district judge stated, "I conclude that the ordinance under which the Defendant was stopped was Constitutional and that the stop was lawful." *Id.* at 141.

Further, the district judge said that "even if it could be determined that the ordinance was vague and overbroad, it would be inappropriate . . . to apply the exclusionary rule because of the good faith reliance by a police officer on the Constitutionality of an ordinance and, specifically, the one in question, and that is the rule set forth," *id.* at 141, by the Supreme Court in *Illinois v. Krull,* 480 U.S. 340, 342, 360 (1987) (extending the *United States v. Leon*, 468 U.S. 897 (1984), good faith exception to evidence obtained under an unconstitutional statute). The district judge then denied the motion to suppress. III R. 141. Thus, the district

---

Ordinance No. 62, Section 2-1-10, a vagrancy ordinance, rather than Town of Bernalillo, Ordinance No. 62, Section 2-1-7, the noise ordinance. *See id.* at 52-54, 108-114. Officer Belyeu testified that he provided Vanness with a citation for violating the noise ordinance a number of days after the stop while Vanness was still in custody at the federal holding facility. *Id.* at 49-50.
     Neither Officer Belyeu nor the Bernalillo Municipal Clerk had a copy of the original citation at the time of the suppression hearing on June 13, 2001. *Id.* at 50-53. On cross-examination, the clerk answered affirmatively that "if everything else on the citation was about unreasonable noise, but the officer put the wrong number down, you've got to put the number down he wrote. . . ." *Id.* at 116. Officer Belyeu testified that he was certain he cited Vanness for violating the noise rather than the vagrancy ordinance. *See id.* at 51-52, 54.

judge in addition to finding the noise ordinance constitutional, also held that the good faith exception barred the application of the exclusionary rule.

The district court denied Vanness's suppression motion on June 13, 2001 and on July 31, 2001, Vanness pled guilty to the grand jury indictment as part of a plea agreement which reserved his right to appeal the district court's denial of his motion to suppress evidence. II R. (Doc. 88 at 2).

## II

## DISCUSSION

*The good faith exception to the exclusionary rule*

We agree with the government that even if the ordinance is held unconstitutional, the good faith exception may apply. Whether the good faith exception to the exclusionary rule applies is a question of law that this court reviews *de novo. See United States v. Tuter*, 240 F.3d 1292, 1299 (10th Cir.), *cert. denied,* 534 U.S. 886 (2001).

The good faith exception was pronounced by the Supreme Court in *United States v. Leon,* 468 U.S. 897 (1984). There the Court addressed this question:

> This case presents the question whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.

*Id.* at 900. The Court stated further:

> We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a

subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

*Id.* at 922.

The *Leon* good faith exception was extended by the Court in *Illinois v. Krull*, 480 U.S. 340 (1987), to cases in which law enforcement officers seized evidence in objectively reasonable reliance on a statute that subsequently was determined to be unconstitutional. Unless "a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." *Id.* at 349-50. However, a statute cannot support objectively reasonable reliance if, in passing the statute, "the legislature wholly abandoned its responsibility to enact constitutional laws." *Id.* at 355. Nor can "a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Id.*; *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

We note that this court may reach the conclusion that Officer Belyeu objectively acted in good faith without actually deciding whether the ordinance itself was constitutional. *See Krull*, 480 U.S. at 357, n.13 & 358, 360 (holding that question of whether statute was unconstitutional was not before the court and that officer's reliance on statute was objectively reasonable and good faith exception applied). Because the New Mexico courts have not

directly addressed the constitutionality of the Town of Bernalillo's noise ordinance and because the federal courts do not have the "power to construe and narrow state laws," *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972), this court refrains from reaching the constitutional issue. *See ANR Pipeline Company v. Lafaver,* 150 F.3d 1178, 1186 n.8 (10th Cir. 1998) ("[F]ederal courts should avoid reaching the merits of a constitutional issue when the case may be decided on [other] grounds"), *cert. denied*, 525 U.S. 1122 (1999); *Cunico v. Pueblo School District No. 60,* 917 F.2d 431, 438 n.5 (10th Cir. 1990) ("[C]ourts normally avoid resolution of constitutional issues when the case may be decided on nonconstitutional grounds"). Therefore, we will not reach the issue whether the "Unreasonable Noise" ordinance is constitutional.

Turning to the objective good faith inquiry, we hold that in the instant case "a law enforcement officer" could have "acted in good-faith reliance upon" the "Unreasonable Noise" ordinance because "its provisions are such that a reasonable officer" would not have "known that the statute was unconstitutional." *Krull*, 480 U.S. at 355. Both Officers Belyeu and Munk testified that they had issued several citations under the ordinance, and the ordinance had never been determined to be, nor challenged as, invalid. *See* III R. 85, 92, 98-99 (Transcript of 6/13/01 proceedings).

Additionally, in 1990, the New Mexico Court of Appeals held that a similar statute that prohibited disorderly conduct was not void for vagueness or overbreadth. *State v. James M.*, 111 N.M. 473, 477-78 (N.M. Ct. App.), *cert denied,* 111 N.M. 529 (N.M. 1991). The

statute at issue in that case defined disorderly conduct as "violent, abusive, indecent, profane,

boisterous, unreasonably *loud* or otherwise disorderly conduct which tends to *disturb the*

*peace . . . .*" N.M. Stat. Ann. § 30-20-1(A) (1978) (emphasis added). In comparison, the

noise ordinance at issue in the instant case provides:

> 2-1-7 UNREASONABLE NOISE. It is unlawful for any person to make, continue or cause to be made, any *loud* or unusual noise which either annoys, *disturbs*, injures or endangers the comfort, repose, health, *peace* or safety of others. Unlawful noises include but shall not be limited to the following:
>
> * * * *
>
> (b) Radios and Phonographs. The use or operation of any radio, phonograph or other sound producing machine in such a manner as to *disturb the peace* and quiet of neighbors.

Town of Bernalillo Ordinance No. 62, § 2-1-7 (emphasis added). Both the statute in question

in *James M.* and the ordinance at issue here prohibit loud conduct or noise which disturbs the

peace. Thus, a law enforcement officer, familiar with the case law of New Mexico, could

have objectively and reasonably relied on the noise ordinance at issue in the present case.

We are persuaded that the officers' actions were objectively reasonable here in light

of Supreme Court and Tenth Circuit precedent. In this analysis we do not decide the

constitutionality of the ordinance, but merely that it was objectively reasonable for the

officers to rely on the noise ordinance. *See, for example, South Dakota v. Opperman*, 428

U.S. 364, 368 (1976) (discussing the lesser expectations of privacy associated with

automobiles and noting that "[a]utomobiles, unlike homes, are subjected to pervasive and

continuing governmental regulation and controls . . . ." and police routinely "stop . . .

vehicles . . . if . . . violations, such as . . . excessive noise, are noted . . . ."); *see also United*

-10-

*States v. Johnson*, 463 F.2d 70, 71 (10th Cir. 1972) (noting, without comment, that police stopped defendant's car for operating in violation of noise ordinance). Thus, Officer Belyeu's reliance on the noise ordinance at issue in the present case was objectively reasonable in light of binding Supreme Court and Tenth Circuit precedent.

Vanness argues that the government failed to meet its burden to establish that Officer Belyeu's reliance on the terms of Town of Bernalillo Ordinance No. 62, Section 2-1-7 was objectively reasonable. *Leon,* 468 U.S. at 924 ("[T]he prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time."); *United States v. Corral-Corral*, 899 F.2d at 932 (holding that the government has the burden of proving objectively reasonable reliance by agents.). We disagree.

Specifically, Vanness asserts that nearly thirty years before this case arose, the Supreme Court held in *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971), that a city ordinance criminalizing conduct which "annoys" was unconstitutionally vague because "no standard of conduct is specified at all." Further, both the Supreme Court and this court, according to Vanness, have held for decades that vehicle stops are invalid under the Fourth Amendment if no reasonable standards constrain the exercise of discretion by law enforcement officers. *See, for example, Delaware v. Prouse,* 440 U.S. 648, 654-55, 661 (1979); *United States v. Botero-Ospina*, 71 F.3d 783, 788 (10th Cir.), *cert. denied*, 518 U.S. 1007 (1996); *United States v. Seslar*, 996 F.2d 1058, 1063 (10th Cir. 1993).

We disagree with Vanness because the cases he cites are inapposite. In *Coates*, the

Supreme Court held that a statute under which three or more people meeting together on a sidewalk or street corner, must "conduct themselves so as not to annoy any police officer or other person who should happen to pass by" was "unconstitutionally vague." *Coates*, 402 U.S. at 614. The Court stated "the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates*, 402 U.S. at 614.

The ordinance at issue in the instant case does not create this type of potential for abuse. First, unlike the anti-loitering ordinance in *Coates,* the noise ordinance in the instant case, Section 2-1-7 of Town of Bernalillo Ordinance No. 62, specifies a standard of conduct. Rather than only prohibiting the creation of noise which "annoys", the ordinance also makes unlawful the making of noise which "disturbs, injures or endangers the comfort, repose, health, peace or safety of others." Section 2-1-7 of Town of Bernalillo Ordinance No. 62. While the anti-loitering ordinance in *Coates* focused on the content of speech and was unconstitutionally vague because it specified no standard of conduct*,* the noise ordinance in the present case focuses on the manner of speech, is content-neutral, and does not present the kind of constitutional problem that existed in *Coates.* Furthermore, as we have stated above, we do not reach the constitutional merits of the noise ordinance in any event.

Second, the noise ordinance can be severed so the paragraph which includes the word "annoys," which broadly defines "unreasonable noise," can be separated from the paragraph

on "radios and phonographs" which provides a narrower definition.[4] The ordinance prohibits unlawful noises which are defined by the paragraph on radios and phonographs to include "[t]he use or operation of any radio, phonograph or other sound producing machine in such a manner as to disturb the peace and quiet of neighbors." Section 2-1-7(b) of Town of Bernalillo Ordinance No. 62. Reliance on this narrower definition rather than on the broader definition contained in the "unreasonable noise" paragraph would be appropriate should the broader definition be held unconstitutional since Officer Belyeu stopped Vanness because his *radio* was playing loudly. III R. 34-35. (Transcript of 6/13/01 proceedings). Thus, the paragraph Vanness considers unconstitutional can be omitted from the ordinance, leaving only the paragraph on radios and phonographs which provides a narrowly-tailored noise prohibition which constrains conduct, is content-neutral, and is not facially unconstitutional.

Because the noise ordinance, either taken as a whole or severed so that only the "radios and phonographs" section applies, constrains the discretion of law enforcement officers, it is not comparable to the Supreme Court and Tenth Circuit cases Vanness cites in which vehicle stops were held invalid under the Fourth Amendment due to the absence of such constraints. *Prouse,* 440 U.S. 648; *Botero-Ospina*, 71 F.3d 783; *Seslar*, 996 F.2d 1058.

Thus, Officer Belyeu's stop of Vanness's vehicle was valid under the good faith

---

[4] Section 1-1-5 of Town of Bernalillo, Ordinance No. 62 specifically provides for severability:

> 1-1-5 SEVERABILITY: Should any section, paragraph, clause or provision of this ordinance, for any reason, be held to be invalid or unenforceable, the invalidity or unenforceability of such section, paragraph, clause or provision shall not affect any of the remaining provisions of this ordinance.

exception to the exclusionary rule and the district court was correct not to suppress the evidence which resulted from this stop.

## CONCLUSION

For the foregoing reasons, Defendant's conviction is AFFIRMED.