**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DYLAN BECK,

      Defendant-Appellant.

No. 04-4210

(D.C. No. 2:04-CR-00177-PGC)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **PORFILIO**, Circuit Judges, and **BROWNING**, District Judge.[**]

Defendant-Appellant Dylan Beck appeals the district court's order denying his motion to suppress evidence found in the search of a truck he drove. The primary issue is whether the district court properly denied Beck's motion when it applied United States v. Leon, 468 U.S. 897 (1984), and its progeny, and found that the officers exercised good-faith reliance upon a search warrant which a neutral and detached magistrate issued.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable James O. Browning, District Judge, United States District Court for the District of New Mexico, sitting by designation.

Because the Court concludes that the search warrant affidavit is not wholly lacking in indicia of probable cause, the Court affirms the district court's order.

## FACTUAL BACKGROUND

The charges in this case arise from evidence that Moab City, Utah police discovered during a search of a truck that belonged to Beck's father. On August 16, 2003, Moab police officers received information from a concerned citizen, identified as "RP" in the search warrant affidavit, that a friend had smoked methamphetamine with Beck for the entire previous night. Affidavit of Agent Russell Pierce ¶ 5, at 2 (executed August 18, 2003). RP "could tell" that her friend was "under the influence," was concerned about her welfare, and consequently contacted police for assistance. Id. ¶ 5, at 3.

Officer Rogers interviewed RP's friend, identified as "CI" in the affidavit. CI related to Rogers the prior night's circumstances and provided information on her activities with Beck involving the methamphetamine. See id. ¶ 5, at 2. The police documented in the probable cause section of the affidavit what CI related to them. See id. ¶ 5, at 2-3.

According to CI, Beck "picked CI up," and together, they went to Beck's home near the city park where Beck lived with his grandmother. Id. ¶ 5, at 2. After a relatively short time at the home, Beck "drove" CI to a particular, identifiable location in the Moab City outskirts, Hidden Valley. Id. ¶ 5, at 3. Once there, Beck pulled methamphetamine

-2-

out of his fanny pack, and the two smoked it at various stages throughout the night.  See id.

Additionally, the two smoked a number of Marlboro brand tobacco cigarettes.  See id.  At one point during the night, Beck became frustrated with a recordable music compact disk, and broke and discarded it at the Hidden Valley location.  See id.  In the early morning, Beck "dropped . . . . off" CI back in town near Beck's residence.  Id.  A blue pickup truck "was used as transportation to and from [Beck's] residence."  Id. ¶ 2, at 1-2.

Upon receiving this information, officers spent the next day corroborating the details that CI had provided.  They located the home, which they confirmed Beck's grandmother owned, near Moab City Park, see id. ¶ 2, at 1, and identified the blue pickup truck "driven by Dylan Beck" parked in front of the home, id.  They also inspected the outskirt location in Hidden Valley where CI described being "parked" with Beck.  Id. ¶ 5, at 3.  There, officers found cigarette butts where CI reported that they had been smoking Marlboro cigarettes.  See id.  In addition, officers located a broken compact disk at the location CI indicated it would be.  See id.  The recovered compact disk was the same recordable type disk that CI described Beck breaking and discarding.  See id.

Once officers completed this follow-up, they approached an authorized Utah state magistrate, a district juvenile court judge, for review of their application.  Officer Russell Pierce drafted the affidavit in support of the search warrant and executed it on August 18,

2003. There is no evidence in the record to suggest that a prosecutor signed off on the affidavit before the officers presented it to the magistrate.

In the affidavit, the officers requested authorization to search for controlled substances and related evidence. Specifically, the affidavit sought permission to search the bedroom that Beck occupied in his grandmother's house, Beck's fanny pack, and the vehicle identified as "a 1997 blue Ford F-250 super cab pick-up, [which] is registered to Bruce Beck and has the Utah license plate 742 ZUL." Id. ¶ 2, at 1. The vehicle is further described as "registered to Bruce Beck and driven by Dylan Beck." Id. The affidavit states: "This vehicle was used as transportation to and from [Beck's] residence." Id. The affidavit's probable cause section, however, did not identify the truck. See id. ¶ 5, at 2-3.

Upon review, the state magistrate judge determined there was probable cause and, on August 18, 2003 -- within two days of the initial report to the police -- approved the search warrant, limited to Beck's bedroom at his grandmother's home, the blue pickup truck, and the fanny pack. See Search Warrant, at 1 (dated August 18, 2003). Officers executed the search warrant that same day, and while searching for controlled substances evidence, found the firearm and ammunition, in addition to some drug paraphernalia and a small quantity of marijuana, inside the blue pickup truck. The dispute in this case centers upon the firearm and ammunition found in the blue pickup truck.

## PROCEDURAL BACKGROUND

A grand jury charged Beck in a three-count indictment. Count I charged Beck as a

user or addict of a controlled substance in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(3), and two counts -- Counts II and III -- charged him with simple possession of a controlled substance (methamphetamine and marijuana), in violation of 21 U.S.C. § 844.

Beck moved to suppress the evidence found in the blue pickup truck, arguing that there were insufficient facts to support a valid search warrant. The United States argued that suppression of the evidence was not warranted because: (i) the district court should afford the state judge's probable cause determination great deference; and (ii) United States v. Leon and its progeny direct that, even in cases where the supporting affidavit does not establish probable cause, the officers may in good faith rely upon a search warrant that a detached, neutral magistrate issued. The district court considered the search warrant and affidavit, the parties' briefs, and oral arguments before denying the motion.

The district court declined to rule whether the affidavit, which mentions the truck as property to be searched but does not explicitly connect the truck to any alleged criminal activity, was sufficient to support probable cause. Instead, the district court focused on the United States' second argument, stating that "[t]he natural reading is that that was the vehicle that was used during the course of the evening activities, and if so, that would create a probable cause." Transcript of Hearing on Motion to Suppress at 20:14-16 (taken May 17, 2004). The district court denied Beck's motion to suppress, finding that the

good-faith exception to the exclusionary rule applied. Specifically, the officers relied in good faith upon the search warrant that the neutral and detached magistrate issued. The district court based its denial of Beck's motion on two factors: CI's veracity and its conclusion that the drafting officer put the sentence regarding the use of the vehicle in the wrong paragraph.

Before finding that the good-faith exception should apply, the district court commented: "I don't mean to commend the [affidavit] as a model of clarity or a model of proper practice." Id. at 19:25 - 20:1. The district court indicated -- twice -- that, with regard to the applicability of the good-faith exception, this is a "close case." Id. at 18:15, 21:7.

Following the district court's ruling, Beck entered a conditional guilty plea to Count I, possession of a firearm and ammunition by an unlawful user or an addict of a controlled substance. The district court dismissed the remaining counts pursuant to the plea agreement, and on August 23, 2004, it sentenced Beck to five months imprisonment and to thirty-six months of supervised release. The district court entered judgment on September 7, 2004. Beck submitted a timely notice of appeal, and, upon his motion for release pending appeal, the district court stayed his sentence pending the appeal. The Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

**LAW REGARDING UNITED STATES V. LEON**

1.      **Standard of Review.**

The Court reviews the sufficiency of a search warrant *de novo*.  See United States

v. Rice, 358 F.3d 1268, 1274 (10th Cir. 2004), vacated on other grounds, 125 S.Ct. 1028

(2005).  "Whether the good-faith exception to the exclusionary rule applies is a question

of law that this court reviews *de novo*."  United States v. Vanness, 342 F.3d 1093, 1097

(10th Cir. 2003).  See United States v. Rice, 358 F.3d at 1274.

2.      **Standards for Issuing a Search Warrant.**

Before a court can issue a search warrant, "the judicial officer issuing such a

warrant [must] be supplied with sufficient information to support an independent

judgment that probable cause exists for the warrant."  Whiteley v. Warden, Wyo. State

Penitentiary, 401 U.S. 560, 564 (1971).  "A search warrant must be supported by probable

cause, requiring 'more than mere suspicion but less evidence than is necessary to

convict.'" United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000)(quoting

United States v. Burns, 624 F.2d 95, 99 (10th Cir. 1980)).  "In reviewing whether

probable cause existed for issuing a search warrant, [t]he test is whether the facts

presented in the affidavit would warrant a man of reasonable caution to believe that

evidence of a crime will be found at the place to be searched."  United States v. Tisdale,

248 F.3d 964, 971-72 (10th Cir. 2001)(internal quotations omitted)(quoting United States

v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999)).

Furthermore, "'[p]robable cause undoubtedly requires a nexus between [the contraband to be seized or] suspected criminal activity and the place to be searched.'" United States v. Rowland, 145 F.3d 1194, 1203 (10th Cir. 1998)(quoting United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990)). Additionally, where the police do not present oral testimony to the reviewing magistrate, the appellate court must ascertain the existence of probable cause to support a warrant exclusively from the affidavit's four corners. See Whitely v. Warden, Wyo. State Penitentiary, 401 U.S. at 565 n.8. Although the reviewing court "should afford a magistrate's probable cause decision great deference," it should "not defer if there is no 'substantial basis for concluding that probable cause existed.'" United States v. Danhauer, 229 F.3d at 1006 (quoting United States v. Rowland, 145 F.3d at 1204).

### 3. The Good-Faith Exception.

In United States v. Leon, the Supreme Court of the United States explained that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 916. Consequently, the Supreme Court held that a court need not suppress evidence seized pursuant to a facially valid warrant that later turns out to lack probable cause as long as police were acting in good-faith reliance on the warrant. See id. at 922-23. "'The first notion to be remembered in considering the good faith principle is the presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith." United States v.

McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993)(quoting United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985)).

"In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question." United States v. Danhauer, 229 F.3d at 1005. See United States v. Leon, 468 U.S. at 924-25. "When reviewing the reasonableness of an officer's reliance upon a search warrant, this court must examine the underlying documents to determine whether they are 'devoid of factual support.'" United States v. Danhauer, 229 F.2d at 1006 (quoting United States v. McKneely, 6 F.3d at 1454). "'[T]he government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable.'" United States v. Cook, 854 F.2d 371, 373 (10th Cir. 1988)(quoting United States v. Michaelian, 803 F.2d 1042, 1048 (9th Cir. 1986)).

According to the Supreme Court's decision in United States v. Leon, there are four situations in which an officer would not have reasonable justification for believing a warrant was properly issued. See 468 U.S. at 922-23.

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth. Second, the exception does not apply when the issuing magistrate wholly abandon[s her] judicial role. Third, the good-faith exception does not apply when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

United States v. Danhauer, 229 F.3d at 1007 (quotations and citations omitted). See

United States v. Leon, 468 U.S. at 923. Thus, these situations would not afford a good-

faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. at 923. The

test to determine whether the court should apply the "good faith" exception "is confined

to the objectively ascertainable question whether a reasonably well trained officer would

have known that the search was illegal despite the magistrate's authorization." Id. at 922

n.23.

In cases where the supporting affidavit did not establish probable cause, the Court

has held that suppression of the found evidence is not warranted so long as the officers

relied in good faith on a duly authorized search warrant. See United States v. Danhauer,

229 F.3d at 1007; United States v. Tuter, 240 F.3d 1292, 1300 (10th Cir. 2001). In

United States v. Danhauer, the Court found a good-faith exception even though an

affidavit did not establish probable cause. See 229 F.3d at 1007. The affidavit in United

States v. Danhauer did not include "information establishing the informant's reliability or

basis of knowledge." Id. Nevertheless, the Court held that, where probable cause for a

warrant is lacking because of police failure to corroborate a confidential informant's

representations, basis of knowledge, or reliability, the good-faith exception can still

salvage the search when the officer has taken steps to investigate the informant's

allegations and thus could reasonably believe that probable cause existed. See id. The

Court stated that it would not find good-faith reliance, however, where the warrant's

underlying documents are "devoid of factual support." Id. at 1006 (citing United States v. McKneely, 6 F.3d at 1454). The Court held that the affidavit "was not so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the state magistrate's authorization." Id. (citing United States v. Leon, 468 U.S. at 922 n.23).

In United States v. Tuter, the Court held that review should be based on the "totality of the circumstances presented in the affidavit." 240 F.3d at 1295. In that case, the district court granted the motion to suppress, stating that the affidavit was insufficient to support the issuance of a search warrant. See id. at 1295. The Court, despite finding that the Tuter affidavit did not establish probable cause, held that the good-faith exception applied and reversed the district court's granting of the motion to suppress. See id. at 1293. Indeed, the affidavit in United States v. Tuter included many inaccuracies, including "several errors and inconsistencies," "an incorrect social security number for defendant Tuter," "misspell[ing the defendant's] name twice," and mistakes regarding the weapon sought and the residence history of the address to be searched. Id. at 1294. Nevertheless, the Court held: "'Just as reviewing courts give great deference to the decisions of judicial officers who make probable-cause determinations, police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant." Id. at 1300 (internal quotations omitted)(quoting United States v. Corral-Corral, 899 F.2d

at 939).  See United States v. Leon, 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . . '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'")(quoting Stone v. Powell, 428 U.S. 465, 448 (1976)).

In United States v. Gonzales, 399 F.3d 1225 (10th Cir. 2005), the Court upheld a district court's ruling, finding that the good-faith exception did not apply and granting a motion to suppress.  See id. at 1227.  In United States v. Gonzales, the affidavit requested permission to search "321 E. Church."  Id.  The only information in the affidavit linking that address to criminal activity was the statement that, in the detective's training and experience, firearms "are often kept at the residence as well as in vehicles."  Id. at 1228.  The affidavit did not specify "that 321 E. Church was [the defendant's] residence or that there was any other connection between that location and [the defendant], the vehicle, or the suspected criminal activity."  Id. at 1228.

In affirming the district court, this Court rejected the United States' argument that the good-faith exception was proper because before the officer submitted the affidavit to a magistrate, he submitted it for review by his supervisory sergeant and presented it to an assistant district attorney.  See id. at 1230.  The Court explained: "While officers are generally entitled to rely on the magistrate's judgment, they are also required to exercise their own professional judgment."  Id.  The Court agreed "with the Sixth Circuit that good faith may exist when a minimal nexus between the place to be searched and suspected

-12-

criminal activity is established." Id. at 1231. Based on the facts of that case, the Court found that such a minimal nexus was absent. See id. at 1231. In reaching its conclusion, the Court relied on some of the reasoning in United States v. Hove, 848 F.2d 137 (9th Cir. 1988). See id. at 1231.

> Like *Hove*, the affidavit in this case completely failed to explain why the detective believed the items sought would be found at 321 E. Church. And even though we have previously held that courts may properly rely on an officer's experience in finding probable cause, *Corral-Corral*, 899 F.2d at 937; *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars in U.S. Currency*, 965 F.2d 868, 874 (10th Cir. 1992), here, the detective's generically stated experience-that "firearm [sic] are often kept at the residence"-- was not supported by any facts establishing the residence belonged to or was otherwise linked to Mr. Gonzales.

Id. The Court concluded there was no "factual basis connecting the place to be searched to the defendant or suspected criminal activity," and therefore the affidavit and resulting warrant are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (quoting United States v. Leon, 468 U.S. at 923).

## ANALYSIS

Beck argues that the district court should have suppressed the fruits of the search of the vehicle as illegally obtained in violation of the Fourth Amendment. Beck also argues that the third circumstance delineated in Leon and Danhauer nullifies any good-faith reliance on the officers' part. Specifically, Beck contends that suppression is warranted because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. at

-13-

923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975)(Powell, J., concurring in part)). "Appellate courts have discretion to address probable cause or to proceed directly to good faith." United States v. Gonzales, 399 F.3d at 1228. See United States v. Leon, 468 U.S. at 924-25; United States v. Danhauer, 229 F.3d at 1005 ("In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question."). The Court will therefore proceed directly to the good-faith analysis.

### 1. The Good-Faith Exception.

Beck argues that the good-faith exception should not apply because the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975)(Powell, J., concurring in part)). Beck contends that, because the affidavit's probable cause section contains no mention of the truck, any belief in the existence of probable cause is unreasonable. Beck's argument turns on a technical reading of the affidavit that focuses on the headings rather than on the affidavit as a whole. He places great weight upon the internal labels or headings of the affidavit: "PROPERTY TO BE SEARCHED" and "PROBABLE CAUSE and INFORMATION." Beck argues that the Court should read these sections exclusive of one another in a piecemeal fashion. Through this rigid reading, Beck concludes that there is a failure to link the truck to the criminal episode.

Such a narrow, technical reading of the affidavit ignores that, when read as a whole, the affidavit describes Beck's criminal activity occurring in and involving a vehicle and identifies the blue vehicle Beck used for transportation. In the "PROPERTY TO BE SEARCHED" section, the affidavit identifies "a vehicle parked in front of the residence registered to Bruce Beck and driven by Dylan Beck." The affidavit describes the vehicle and states: "This vehicle was used as transportation to and from [Beck's] residence." It also states that the evidence sought may be located in the vehicle. The "PROBABLE CAUSE and INFORMATION" section of the affidavit presents evidence that "Beck picked up CI" and they went to Beck's house to pick up a methamphetamine pipe, "they drove out to Hidden Valley," they "parked" and spent the entire night smoking methamphetamine and cigarettes and listening to music, and then Beck "dropped CI off" in the morning. Although it does not say so explicitly, the natural reading of the affidavit indicates that the vehicle identified in the probable cause section is the vehicle involved in the criminal offense.

Under United States v. Leon, there is a presumption that, "when an officer relies upon a warrant, the officer is acting in good faith." United States v. McKneely, 6 F.3d at 1454 (quoting United States v. Cardall, 773 F.2d at 1133). An officer's reliance on a search warrant is not reasonable, however, when the documents underlying a search warrant are "devoid of factual support." United States v. Danhauer, 229 F.2d at 1005(quoting United States v. McKneely, 6 F.3d at 1454). For good faith to exist there

must be "a minimal nexus between the place to be searched and suspected criminal activity." United States v. Gonzales, 399 F.3d at 1231.

The Court finds good-faith reliance here because the underlying documents are not "devoid of factual support." The affidavit states that Beck and CI went to Beck's residence, retrieved drug paraphernalia, and then drove from Beck's residence to Hidden Valley where they smoked methamphetamine all night. The affidavit also identifies the blue truck and states: "This vehicle was used as transportation to and from his [Beck's] residence." In a commonsense reading of the affidavit, and under the totality of the circumstances, the district court reasonably concluded: "The natural reading is that [the blue pickup truck] was the vehicle that was used during the course of the evening activities, and if so, that would create probable cause [that there would be evidence of the crime inside the pickup truck]." Although the affidavit is weak, it establishes "a minimally sufficient nexus between the illegal activity and the place to be searched." United States v. Gonzales, 399 U.S. at 1230 (quoting United States v. Carpenter, 360 F.3d 591, 596 (6th Cir. 2004)).

Moreover, as in United States v. Danhauer, the officers in this case corroborated the information that CI gave. Even if the search warrant and underlying affidavit were insufficient, the good-faith exception can still salvage the search because the officers took steps to investigate the informant's allegations and thus could reasonably have believed that probable cause existed. See United States v. Danhauer, 229 F.3d at 1007 ("[T]he

absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued particularly when the officer takes steps to investigate the informant's allegation." (citation omitted)).

The Court cannot conclude that there was no factual basis connecting the blue truck to Beck or the suspected criminal activity, and therefore cannot find that the affidavit and resulting warrant are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." The Court thus cannot consider the good-faith reliance upon the signed search warrant to be "entirely unreasonable," where the state court judge reviewed and approved the affidavit, and found it to have sufficient probable cause. United States v. Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. at 610-11 (Powell, J. concurring in part)) .

**2.       United States v. Hove.**

Beck centers much of his argument on the circumstances and conclusions found in the United States Court of Appeals for the Ninth Circuit's decision in United States v. Hove. Specifically, Beck urges the Court to adopt the Ninth Circuit's standard of review in United States v. Hove and compares the factual circumstances of United States v. Hove to those in this case.

In United States v. Hove, the Ninth Circuit held that the officers could not rely in good faith on a warrant supported by an affidavit that did not connect the crime to the

place sought to be searched.  See 848 F.2d at 140.  In United States v. Hove, the affidavit contained facts suggesting the defendant may have committed a crime.  It did not, however, connect the defendant or the criminal activity to the residence to be searched, instead merely listing the address as a location to be searched.  The Ninth Circuit said that the good-faith exception could not apply to validate a search of a home where the officer had subjective knowledge of the facts which could have amounted to probable cause, but did not include those facts in the affidavit or present them to the magistrate.  See id.

In declining to apply the good-faith exception, the Ninth Circuit employed a standard that focused upon a reasonable jurist's review of a contested affidavit, rather than that of a reasonable officer.  The Ninth Circuit explained that its "test for reasonable reliance is whether the affidavit was sufficient to 'create disagreement among thoughtful and competent judges as to the existence of probable cause.'"  Id. at 139 (quoting United States v. Leon, 468 U.S. at 926).  The Ninth Circuit held that "reasonable judges could not disagree over whether probable cause existed to search the [home] because the affidavit offers no hint as to why the police wanted to search this residence."  Id. at 139-40.  Under this standard, an officer's reliance on a warrant would be objectively reasonable only if an affidavit presented enough evidence to create disagreement among judges as to the existence of probable cause.  The Ninth Circuit stated: "*Leon* does not extend . . . to allow the consideration of facts known only to an officer and not presented to a magistrate.  The *Leon* test for good-faith reliance is clearly an objective one and it is

based solely on facts presented to the magistrate." Id. at 140.

While the Court in United States v. Gonzales followed the analysis of probable cause in United States v. Hove, the Tenth Circuit has not adopted the Hove standard. See United States v. Taxacher, 902 F.2d 867, 871 (11th Cir. 1990)(rejecting such a judge-based standard). Instead, "[i]n determining whether [this Court] should apply the exception, the 'good-faith inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Corral-Corral, 899 F.2d at 932 (quoting United States v. Leon, 468 U.S. at 922 n.23). Thus, the Court's standard is based upon a "reasonably well trained officer" as opposed to a reasonable jurist in the Ninth Circuit's Hove decision. The Court does not believe, therefore, that the Ninth Circuit's decision in United States v. Hove counsels that the district court's ruling is incorrect.

The Court will affirm the district court's denial of Beck's motion to suppress evidence found in the blue pickup truck. The district court properly denied Beck's motion to suppress when it applied United States v. Leon and its progeny, and found that the officers exercised good-faith reliance upon a search warrant that a neutral and detached magistrate issued. Here, the "extreme sanction of suppression is inappropriate." United States v. Corral-Corral, 899 F.2d at 940. The district court properly found that the officers' good-faith reliance upon an authorized search warrant was not "entirely

-19-

unreasonable."  <u>United States v. Leon</u>, 468 U.S. at 922 n.23.

We AFFIRM the district court's order denying the motion to suppress.

Entered for the Court


James O. Browning
District Judge