**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALFRED C. DUTTON,

Defendant - Appellant.

No. 12-3128

(D. Kansas)

(D.C. No. 6:11-CR-10185-JTM-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

---

Defendant Alfred Dutton pleaded guilty in the United States District Court
for the District of Kansas to one count of possessing an unregistered destructive
device. *See* 26 U.S.C. §§ 5861(d), 5871. In accordance with his plea agreement,
he reserved his right to appeal the district court's denial of his motion to suppress
evidence seized from a storage unit. *See* Fed. R. Crim. P. 11(a)(2). On appeal he
argues that the warrant authorizing the search of the storage unit was not

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

supported by probable cause, and that the good-faith exception to the exclusionary rule does not apply because the warrant's defect was so apparent that the officers who executed it lacked an objective good-faith belief that it was valid. *See United States v. Leon*, 468 U.S. 897 (1984) (establishing good-faith exception to exclusionary rule). Following the clear precedent in *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), we agree. Nothing in the affidavit for the warrant connected Defendant to the storage unit. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the denial of Defendant's motion to suppress and remand for further proceedings.

## I.    BACKGROUND

In August 2011 Captain Leslie Lumley of the Greenwood County, Kansas, Sheriff's Department was contacted by Joe Scott, the boyfriend of Defendant's ex-wife, who related several of his conversations with Defendant. The affidavit for the search warrant was based on those conversations. It stated:

> Joe Scott came to the Greenwood county Sheriff's office to report that Alfred Dutton Jr. possibly had explosives. Scott said that on or about August 9th of 2011 he had gone to Dutton's apartment to pick up a minor child per court visitation. While standing and talking with Dutton he produced a small cylindrical device about the size, Scott thought, of a triple A battery. Dutton asked if he knew what it was and when Joe said he didn't Dutton told him it was a fuse for a hand grenade. During their talk Dutton had said he ordered fuses from the internet and when they arrived and found they were what he wanted he was then going to order Grenade hull's and claymore mine hull's because the fuse worked in either one. When Scott went to pick up the child on August 16th Dutton told him that he could not find the black powder he needed that [sic] to complete the devices

-2-

and he had to order it from Cabela's website on the Internet. Scott said when Dutton told him that he ordered the black powder he became concerned for safety reasons of the minor child and public safety of the resident's [sic] around him in the apartment complex. Scott gave me a package of 20foot safety fuse and told me that Dutton had given it to him just after July 4th of 2010 to "blow stuff up" if he ever needed to. Scott has become concerned because Dutton has told him when the government starts to round up citizens he will be one of the first because of his military background. . . . Scott had left our office to pick up the minor child from the Dutton residence, after picking her up and taking her home he returned to our office and informed me that while at the Dutton apartment Dutton had asked if Scott had a drill press. Scott said that he did, Dutton advised that he would need to borrow it as he needed to drill and tap the grenade bodies so that he could plug them. Based on these facts I believe that Alfred Dutton Jr. has acquired items needed to build an Improvised explosive device for himself at his apartment *or possibly in his storage unit*.

R., Vol. 1 at 27–28 (emphasis added). The place to be searched under the warrant was described as follows:

> Outback storage building unit number 6, located behind the Eureka Senior center at 209 N. Oak in Eureka, KS in Greenwood county. The Storage unit is accessed in the alley west of the Senior center. The storage units are off white in color with white garage style doors on the front. There is a visible number 6 above the North end unit.

*Id.* at 27.

The warrant application was presented to a state magistrate judge. Although Lumley later testified that he answered questions by the magistrate judge about the application, he could not recall what the questions were. After the magistrate judge issued the warrant, law-enforcement agents searched the

storage unit and seized six glass bottles containing homemade napalm, five of which were fully fused.

The government ultimately obtained a superseding indictment charging Defendant on two counts of possessing unregistered destructive devices, one count based on the items seized from the storage unit, and the other based on grenades seized from his apartment. Defendant moved to suppress the incendiary devices seized from the storage unit, arguing that the warrant application had not furnished probable cause to search the unit because "there is no reference in the affidavit as to how Captain Lumley comes to believe [Defendant] has a storage unit or how the 'Outback storage building unit number 6' is associated with [Defendant]." *Id.* at 23. The motion further argued that the affidavit was so lacking in probable cause that the good-faith exception to the exclusionary rule did not apply.

The district court denied the motion to suppress. It held that there was probable cause to issue the warrant to search the storage unit, because it was "reasonable to presume that if [Defendant] was building explosive devices in his home he also stored them in his storage unit." *Id.* at 87. The court held in the alternative that even if the application failed to establish probable cause to search the storage unit, officers had acted in reasonable reliance on the warrant, and therefore the evidence was saved from exclusion by the good-faith exception of *Leon*.

Defendant then pleaded guilty to the count of the superseding indictment that charged possession of the incendiary devices recovered from the storage unit. He retained his right to appeal the denial of his motion to suppress. The government dismissed the other count.

## II. DISCUSSION

"In reviewing a district court's disposition of a motion to suppress, we accept the factual findings unless they are clearly erroneous, and review questions of law de novo. Whether a warrant is supported by probable cause and whether the *Leon* good faith exception applies are both questions of law." *Gonzales*, 399 F.3d at 1228 (citations omitted). "It is well-settled that for probable cause to exist there must be a nexus between the contraband to be seized or suspected criminal activity and the place to be searched." *Id.* (brackets and internal quotation marks). As for the good-faith exception, the Supreme Court has held that "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate . . . should be admissible in the prosecution's case in chief" even if the warrant turns out not to have been justified by probable cause. *Leon*, 468 U.S. at 913. But reasonable reliance has its limits, and an officer fails to manifest the objective good faith necessary to trigger the exception "in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks omitted).

The fatal flaw in the search warrant here is that the supporting affidavit does not connect the place to be searched—the storage unit—with Defendant. We have no quarrel with the concept that Defendant could reasonably be expected to keep explosives-related materials in his storage unit. What is missing, however, is any evidence that the storage unit to be searched was Defendant's. The reference to "his storage unit" at the end of the affidavit was the first mention of any storage unit and it provided no reason to believe either that Defendant had a storage unit or that the unit described in the warrant was the one he owned.

Our decision in *Gonzales* is very much in point. After the defendant had been arrested for driving while intoxicated, a magazine with live ammunition was found in the car during an inventory search. The officers then discovered that the defendant had a prior felony conviction. They obtained a search warrant of a home to look for more firearms and ammunition. *See Gonzales*, 399 F.3d at 1227. We described the warrant and affidavit as follows:

> The supporting affidavit identified "321 E. Church" as the place to be searched and detailed Mr. Gonzales's accident and the resulting inventory search. The detective also stated that he had two years of law enforcement experience and that he "knows from Police training and experience that firearm [sic] are often kept at the residence as well as in vehicles." However, the affidavit never specified that 321 E. Church was Mr. Gonzales's residence or that there was any other connection between that location and Mr. Gonzales, the vehicle, or the suspected criminal activity. The affidavit also failed to specify who owned the vehicle.

-6-

*Id.* at 1227–28 (citation omitted).  The government conceded that the affidavit did not provide probable cause for the search, but argued good faith.  We rejected the argument, explaining:

> For good faith to exist, there must be *some* factual basis connecting the place to be searched to the defendant or suspected criminal activity.  When this connection is wholly absent, the affidavit and resulting warrant are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.  Exclusion is appropriate in such circumstances because "reasonably well-trained" officers, exercising their own professional judgment, will be able to recognize the deficiency.  Here, the warrant was "so lacking," and the officer's reliance upon it was not objectively reasonable.

*Id.* at 1231.

Here, too, there needed to be "*some* factual basis connecting the place to be searched to the defendant or suspected criminal activity." *Id.*  Because such a factual basis was missing, there was not a "minimal nexus between the place to be searched and the suspected criminal activity." *Id.*  The evidence seized from the storage unit should have been suppressed.

## III.   CONCLUSION

We REVERSE the district court's denial of Defendant's motion to suppress and REMAND for further proceedings.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

-7-

12-3128, *United States v. Dutton*

**ANDERSON, J.**, Circuit Judge, concurring:

I concur because, as indicated in the opinion, this court's decision in *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), seems to dictate the result reached. But I agree with the sense of the dissent that *Gonzales* may have unintentionally restricted the application of the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984).

The good faith exception turns on objective reasonableness. *Id.* at 924. Thus, the exception does not apply when, as relevant here, the affidavit supporting the search warrant is so lacking in indicia of probable cause as to "render official belief in its existence <u>entirely</u> unreasonable." *Id.* at 923 (emphasis added). The Supreme Court has recently emphasized that the threshold for establishing such an eventuality "is a high one, and it should be." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012).[1]

I am not so sure that *Gonzales* sufficiently recognized the "high threshold" standard in two ways. First, *Gonzales* seems to require that the link between the defendant and the place to be searched must be explicitly stated.[2] But, as the

---

[1]*Messerschmidt* is a qualified immunity case. But the Court made it clear that the same standard of objective reasonableness applies in both suppression and qualified immunity cases. *Id.* at 1245, n.1.

[2]The opinion has no quarrel with the implication that a bomb-making defendant, confined to an apartment occupied by a child as well as himself, would

(continued...)

dissent points out, at least one panel of this court has found it sufficient if the link is evident from a natural reading of the affidavit. *See United States v. Beck*, 139 F. App'x 950, 957-58 (10th Cir. 2005) (unpublished). I agree with that view. The question is whether, from a reading of the affidavit as a whole, it would have been entirely unreasonable for the officer to make the connection. Is it entirely unreasonable to conclude that the words "his storage unit" refer to the storage unit (and the only storage unit) described almost immediately thereafter? And described in such detail as to fairly imply some focused research had been conducted into the subject? What if a colon rather than a period had been placed after "unit"? Wouldn't that necessarily refer to the described unit? And, if so, is this search to rise or fall on a punctuation mark? If the word "entirely" means anything when modifying unreasonable, and if the "high threshold" requirement set by the Court is to be given effect, then there would seem to be every reason to uphold the officer's view that the described unit was the defendant's unit (and, of course it was, and, as was likely, it did contain bombs. Although none of that is relevant.)

Second, *Messerschmidt* has revitalized the impact of the magistrate's view that the affidavit made out sufficient probable cause to justify the search warrant.

_____

[2](...continued)
keep some of his finished product in his storage unit. I agree that such a nexus may be, and was, made by implication. As discussed above, the only remaining implication was whether the storage unit described was the defendant's.

In *Malley v. Briggs*, 475 U.S. 335 (1986), the Court seemingly dispatched any such consideration by declaring that the question of reasonableness is to be judged as of the time of the warrant application not upon subsequent favorable action by the magistrate based on the application. However, last year, in *Messerschmidt*, the Court clarified its position as follows:

> But by holding in *Malley* that a magistrate's approval does not automatically render an officer's conduct reasonable, we did not suggest that approval by a magistrate or review by others is irrelevant to the objective reasonableness of the officers' determination that the warrant was valid. Indeed, we expressly noted that we were not deciding "whether [the officer's] conduct in [that] case was in fact objectively reasonable." The fact that the officers secured these approvals is certainly pertinent in assessing whether they could have held a reasonable belief that the warrant was supported by probable cause.

*Messerschmidt*, 132 S. Ct. at 1249-50 (quoting *Malley,* 475 U.S. at 345).

Because the parties have not briefed the question, I am not prepared to explore the parameters of this advice from the Court as it may apply to this case—although, returning to the phrase "entirely unreasonable," one wonders why the magistrate's view of the affidavit should not be taken as evidence of its obvious and natural meaning when evaluating whether the officer's take on it was not only unreasonable, but entirely so. However, the point is that the *Gonzales* court omitted any consideration whatsoever of the magistrate's action, even to bring it up and give reasons why it should be disregarded. That may still be the

-3-

case in suppression cases, but the dissent in *Messerschmidt* went out of its way to declare that the majority had retreated from *Malley*.

I cannot get rid of the nagging feeling that if this case came back to us on a claim of qualified immunity in a civil suit, we would have no trouble declaring the officer's actions to have been objectively reasonable. But, as I stated above, I concur that the evidence in question here should be suppressed, based on the controlling precedent, and trust that it will be a lesson to law enforcement to take greater pains spelling out and connecting probable cause facts in affidavits in support of search warrants.

12-3128, *United States v. Dutton*

**GORSUCH**, **J.**, Circuit Judge, dissenting.


A law enforcement officer is presumed to act in "good faith" when he relies on and executes a search warrant issued by a neutral magistrate. *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993). That presumption may be overcome, but only when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984). The affidavit before us may be imperfect, but it's hard to see how it's as flawed as all that.

Here's what the affidavit says. At the top of the first page, it states that the focus of the intended search is a storage unit, giving both a street address and this exquisitely detailed description:

> Outback storage building unit number 6, located behind the Eureka Senior center at 209 N. Oak in Eureka, Ks in Greenwood county. The Storage unit is accessed in the alley west of the Senior center. The storage units are off white in color with white garage style doors on the front. There is a visible number 6 above the North end unit.

R. vol. 1, at 27. The affidavit then proceeds to offer a heap of evidence suggesting Mr. Dutton was in the business of making illegal bombs before explaining the attesting officer's belief that evidence could be found either at Mr. Dutton's "apartment or possibly in his storage unit." R. vol. 1, at 27-28.

So what's missing? The court acknowledges that no one can "quarrel with the concept" that the affidavit supports a reasonable belief Mr. Dutton stored

bomb-making supplies in "his storage unit." Order at 6. All that's missing, the court says, is evidence that "Outback storage building unit number 6" actually belonged to Mr. Dutton. *Id.* The officers' failure to detect this omission in the magistrate-approved warrant, the court says, is fatal. It is the only reason this court reverses the district court, the only reason the court says the officers failed to act in "good faith." As a result, of course, any evidence of the five bombs the officers discovered will now be suppressed and, very likely, the charges against Mr. Dutton will be dismissed.

I respectfully dissent. In my view, Mr. Dutton cannot carry his burden of overcoming the good faith presumption. After all, what might be more reasonable than for an officer reading the magistrate-approved warrant to connect the only storage unit mentioned in the affidavit — one expressly described as *his* (and no one else's) — to the only person mentioned in the affidavit? The magistrate approving the warrant surely must have thought the storage unit belonged to Mr. Dutton, and the officers enforcing it must have thought so too. Even supposing this reading is something less than entirely obvious, so that some tiny inferential step remains, I struggle to see why it makes the affidavit, in *Leon*'s words, "so lacking in indicia of probable cause" as to render belief in its existence "entirely unreasonable." It would hardly require a flight from all reason for an officer to surmise from the detailed description of the unit, the reference to Mr. Dutton and

-2-

no one else, and the assurance that the unit was "his," that the unit in fact *was* his. To know that much is to know *Leon*'s good faith exception must apply.

Admittedly and as the court observes, our own precedent in *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), must be reckoned with. And, as the court notes, some language in *Gonzales* might be read broadly to suggest exclusion as the proper remedy in our case. But since *Gonzales* issued this court has resisted such an expansive reading, adopted a considerably more restrained interpretation, and routinely upheld searches analogous to the one before us. *See, e.g.*, *United States v. Beck*, 139 F. App'x 950, 957-58 (10th Cir. 2005) (unpublished) (distinguishing *Gonzales* and upholding a search where the affidavit described a specific truck to be searched and provided probable cause to believe "the vehicle" was used to transport contraband without explicitly linking the two); *United States v. Roach*, 582 F.3d 1192, 1202-03 (10th Cir. 2009) (distinguishing *Gonzales* and upholding a search where the affidavit stated officers' belief that the suspect resided at the target address, without specific factual support for that belief).

I would do the same here. Under the reading of *Gonzales* this court has adopted in *Beck* and *Roach*, an affidavit need not make a legally necessary point "explicitly" so long it is evident from "the natural reading of the affidavit." *Beck*, 139 F. App'x. at 957; *see also Roach*, 582 F.3d at 1202-03. Applying that test here, there is no question that the natural reading of the affidavit leads a reader to

-3-

the conclusion that the storage unit in question *was* Mr. Dutton's. No other colorable reading is even advanced by Mr. Dutton.

Not only is *Gonzales*'s test, properly understood, readily satisfied. The case is also distinguishable. The affidavit there contained "no facts explaining how the address [of the searched residence] was linked to Mr. Gonzales, . . . the suspected criminal activity, or why the officer thought the items to be seized would be located at the residence." 339 F.3d at 1230. By the court's assessment today, however, neither of the latter two problems exists in our case: the affidavit before us supplies sufficient reason to think that a storage unit belonging to Mr. Dutton would be linked to his illegal bomb making and that contraband could be found there. Order at 6. The *only* question in this case is whether a not-entirely-unreasonable officer reading the warrant for Mr. Dutton's storage unit could have thought the particular storage unit identified in the affidavit as "his" *was* his. This is a situation *Gonzales* simply did not profess to resolve. *See Gonzales*, 399 F.3d at 1227-28.

To be sure, we owe our panel precedents deference and may overrule them only through established *en banc* procedures. But it is just as surely our duty, when fairly possible, to read our precedents in light of and consistently with the Supreme Court's directions. When it comes to *Gonzales*, this court in *Beck* and *Roach* has read it far less expansively than the court does today and much more harmoniously with *Leon*. I would follow that same course here. Extending

-4-

*Gonzales* to require exclusion in this case is not required by our precedent (it is closer to inconsistent with it) and it leads us to issue a decision today that is inconsistent as well with the Supreme Court's directions in *Leon*. Respectfully, I decline to follow that path.